# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2013-KA-00772-SCT

*CHARLES DAVID BURLESON, II a/k/a CHARLES BURLESON*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 10/12/2012 |
| TRIAL JUDGE: | HON. JAMES LAMAR ROBERTS, JR. |
| TRIAL COURT ATTORNEYS: | JOHN C. HELMERT, JR. |
| | VICKI R. SLATER |
| | RICHARD D. BOWEN |
| | JOSH WISE |
| COURT FROM WHICH APPEALED: | PRENTISS COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER |
| | BY: ERIN ELIZABETH PRIDGEN |
| | GEORGE T. HOLMES |
| | JOHN CARL HELMERT, JR. |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: MELANIE DOTSON THOMAS |
| DISTRICT ATTORNEY: | J. TRENT KELLY |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | REVERSED AND REMANDED - 05/21/2015 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**WALLER, CHIEF JUSTICE, FOR THE COURT:**

¶1.     Charles David Burleson II appeals his conviction and sentence for capital murder with

the underlying felony of robbery.  Finding that the trial court erred in amending Burleson's

indictment to charge him as a violent habitual offender and in denying Burleson's proffered

circumstantial-evidence instruction, we reverse Burleson's conviction and sentence and remand this case for a new trial.

## FACTS & PROCEDURAL HISTORY

¶2.     On Saturday, May 15, 2010, Donnie Holley returned to his home in Thrasher, Mississippi, after a fishing trip with his son Scott.  As he was checking his mail, he noticed a white car driving off his property and away from his house.  When he entered his house, he found his son Steven lying on the floor in the living room. Steven was completely unresponsive, and a pool of blood had collected under his head. Donnie immediately called 9-1-1. Steven was taken to the hospital, but doctors were unable to revive him, and he died from his injuries five days later.

¶3.     Officer Derrick Hester of the Prentiss County Sheriff's Department and his partner Officer Tammy Johnson were the first to respond to Donnie's 9-1-1 call.  They arrived at the house around 1:00 p.m.  After medical personnel arrived to tend to Steven, Officer Hester and Officer Johnson investigated the rest of the house. The bedrooms in the house appeared to have been ransacked.  In Steven's room, clothes were strewn across the floor, dresser drawers had been left open, and the mattress had been thrown off the bed.

¶4.     Officer Hester called Investigator Roy Ragin of the Prentiss County Sheriff's Department to assist with the crime scene investigation. Upon entering the Holley residence, Investigator Ragin observed blood stains on the couch in the living room, next to where Steven was found. Investigator Ragin collected a knife discovered under Steven's body, but he did not observe any blood on the knife. Investigator Ragin observed that a medicine

2

cabinet in the house was in disarray, as if someone had rummaged through it. Outside the house, Investigator Ragin found broken glass from the storm door in the Holleys' carport, and one of the metal bars on the storm door was missing. Investigator Ragin interviewed Donnie to find out if anything was missing from the house, and he also spoke to some of the Holleys' neighbors. Donnie stated that a flat-screen TV, a DVD player, and some prescription medication were missing from the house.

¶5. After leaving the Holleys' house, Investigator Ragin received a call from Joey Clark, a narcotics investigator with the Prentiss County Sheriff's Department. Investigator Clark previously had worked on a case involving Steven, and he offered to help Investigator Ragin locate people who might have been associated with Steven. Investigator Clark met with Investigator Ragin and Officer Hester on the evening of May 15 to discuss the investigation.

¶6. At around midnight on May 15, Investigator Clark and Investigator Ragin received a text message from Tammy Cook, who lived approximately twenty miles from the Holleys, asking for details about Steven. Investigator Ragin went to Cook's house to interview her. Cook told Investigator Ragin that a man named Jeremy Huguley had been to her house at least twice that day, once early in the morning and again around 1:00 p.m. On his second visit, Huguley had arrived with his girlfriend Kayla Cartwright and another man, later identified as Burleson, whom Cook did not recognize at the time. Huguley, Burleson, and Cartwright had arrived at Cook's house in a white Oldsmobile. Cook watched Huguley take a metal bar out of the car and throw it into the woods next to her house. Huguley also retrieved a garbage bag from the car and placed it under Cook's porch. Huguley and

Cartwright then left in the white car, but Burleson stayed outside, talking to Cook's son Max. Shortly thereafter, someone driving a green Ford Mustang picked up Burleson. Max then retrieved the metal bar that Huguley had thrown into the woods, and Cook retrieved the garbage bag that Huguley had left under her porch. Cook inspected the contents of the garbage bag and found prescription medication information forms with Donnie Holley's name on them. At that point, Cook contacted Investigator Clark and Investigator Ragin. Cook also told Investigator Clark that Huguley previously had left a gun at her house, hidden in Max's room. Huguley had come back to her house while she was gone and retrieved the gun and took $200 in cash from her son's room.

¶7. Based on Cook's statements, Investigator Ragin notified the police to be on the lookout for a white Oldsmobile or a green Ford Mustang. Cartwright and Huguley were both taken into custody in the early hours of May 16, 2010. Huguley was intoxicated when he was brought to the police station, so he was not interviewed at that time, but Investigator Ragin was able to interview Cartwright. Investigator Ragin received Cartwright's consent to search her home for the items missing from the Holley residence. Cartwright and Huguley were living together at the time. At Cartwright's home, Investigator Ragin found a flat-screen TV, a comforter, some CDs, an electric drill, two wallets, and a cell phone, all of which belonged to the Holleys. Investigator Ragin also found prescription medication bottles belonging to Donnie Holley in a garbage can outside Cartwright's house.

¶8. Cartwright stated that, before noon on the day of Steven's attack, she and Huguley had picked up Burleson at a truck stop in Baldwin, Mississippi. After stopping briefly at

4

Cartwright's house, the trio went to the Holleys' house in Thrasher. They all rode together in Cartwright's white Oldsmobile. When they arrived at the Holley residence, Cartwright stayed in the car, while Huguley and Burleson entered the house. Cartwright asked Huguley and Burleson to look for her hair straightener, which she previously had left at the Holley residence. Huguley could not find the straightener, so Cartwright went inside to tell Steven what it looked like. When she entered the house, Steven was sitting on the couch in the living room, and Burleson was sitting across from him on a love seat; Huguley was not in the living room. Cartwright then went back outside and sat in her car while she waited for Huguley and Burleson. Huguley later brought Cartwright her straightener and then went back inside the house.

¶9. Shortly thereafter, Cartwright recalled that "[Burleson] came outside with a pole, but I'm not positive that it was David. It might have been [Huguley] that brought it out. And then [Huguley] brought out a TV wrapped in a blanket, and they put it in the back seat." Cartwright was sure that Burleson and Huguley had each brought an item to the car "because two people can't really be at one place at the same time." Either Burleson or Huguley – Cartwright could not remember who – also placed a toolbox in the car. The contents of the toolbox were unknown to Cartwright at the time. When Huguley got in the car, he had a wallet, a cell phone, and some cash, which he had not had earlier in the day. As they were leaving the Holleys' house, Cartwright saw Donnie checking his mail at the end of the road.

¶10. After leaving the Holley residence, Cartwright, Huguley, and Burleson went to Cook's house in Jumpertown. Cartwright observed Huguley speaking with Cook's son Max, holding

the metal bar from the Holleys' storm door in his hands. When Huguley returned to the car, he did not have the metal bar anymore. Burleson's girlfriend Stacy Filgo picked up Burleson from Cook's house, and Cartwright took Huguley to Booneville to pay his bail bondsman.

¶11. Burleson was arrested by U.S. Marshals in Oakland, Tennessee, on May 19, 2010, as he was leaving a Walmart. At the time of his arrest, Burleson was with Filgo. They had arrived at the Walmart in a green Ford Mustang, with Burleson driving. Under the driver's seat of the car, police recovered a handgun. Cook identified the gun as the one Huguley had taken from her house on the day of Steven's attack.

¶12. On October 26, 2010, Burleson and Huguley were indicted for the capital murder of Steven Holley, with the underlying felony of robbery. The Prentiss County Circuit Court ordered the defendants' trials to be severed. On May 16, 2012, the State moved to amend Burleson's indictment to charge him as a habitual offender under Section 99-19-83 of the Mississippi Code. In support of this motion, the State presented evidence that Burleson previously had been convicted of five separate counts of burglary and larceny of a dwelling. The trial court granted the State's motion to amend the indictment on June 11, 2012.[1] The State also announced prior to trial that it would not pursue the death penalty against Burleson. Burleson's trial commenced on October 8, 2012.

¶13. At Burleson's trial, the State introduced into evidence the metal bar found outside Cook's house. Investigator Ragin testified that the metal bar appeared to have come from the Holleys' storm door, and Dr. Thomas Deering, who had performed Steven's autopsy,

---

[1] The State's motion to amend Burleson's indictment and subsequent withdrawal of that amendment are the subject of Burleson's second assignment of error on appeal.

6

testified that Steven's injuries were consistent with having been caused by the bar. The State also introduced the handgun found under the driver's seat of the car Burleson was driving on the day of his arrest. Cook confirmed that this gun was the same gun Huguley had retrieved from her house on the day of Steven's attack. After the State rested its case-in-chief, Burleson moved for a directed verdict, arguing that the prosecution had failed to present sufficient evidence of the elements of capital murder or the underlying felony of robbery. The trial court denied Burleson's motion. Burleson chose not to testify and presented no other witnesses in his defense, so the case was sent to the jury.

¶14. On October 12, 2012, after a four-day trial, the jury returned a verdict finding Burleson guilty of capital murder. After the jury returned its verdict, the State informed the trial court that it no longer sought to have Burleson sentenced as a habitual offender, as the additional charge would have no effect on Burleson's sentence. The trial court agreed and sentenced Burleson to life in prison without the possibility of parole, without ruling on the habitual-offender charge. Burleson subsequently filed a motion for judgment notwithstanding the verdict (JNOV) or, in the alternative, a new trial. After a hearing, the trial court denied those motions.

¶15. Burleson now appeals, raising the following assignments of error:

> I. **Whether the trial court violated Burleson's right to due process of law by amending the indictment against him to include habitual offender status under Section 99-19-83 of the Mississippi Code.**

> II. **Whether the trial court erred in admitting a gun introduced into evidence by the State.**

7

**III.    Whether the trial judge erred in failing to give a circumstantial evidence jury instruction.**

**IV.    Whether the evidence was insufficient to sustain a conviction for capital murder.**

## DISCUSSION

**I.    Whether the trial court violated Burleson's right to due process of law by amending the indictment against him to include habitual offender status under Section 99-19-83 of the Mississippi Code.**

¶16.    A trial court's decision to amend an indictment is an issue of law, which this Court reviews *de novo*. *Fulton v. State*, 146 So. 3d 975, 977 (Miss. 2014) (citing *Spears v. State*, 942 So. 2d 772, 773 (Miss. 2006)).

¶17.    Five months before trial, the State moved to amend Burleson's indictment to charge him as a habitual offender under Section 99-19-83 of the Mississippi Code. In support of this motion, the State alleged that Burleson had five prior felony convictions for burglary and larceny of a dwelling. The State alleged that at least one of Burleson's prior burglary convictions was for a crime of violence. The State attached the indictments and judgments of conviction for each of Burleson's prior offenses as exhibits to its motion.

¶18.    At the hearing on the motion to amend the indictment, the State argued that each of Burleson's prior burglary convictions represented per se crimes of violence. In support of this argument, the State cited *Brown v. State*, 102 So. 3d 1130, 1137 (Miss. Ct. App. 2011), in which the Court of Appeals recently had held that burglary of a dwelling is a per se crime of violence under Section 99-19-83. The State did not present any evidence indicating that any of Burleson's prior burglaries actually involved violence. Burleson objected to the

8

amendment of the indictment, arguing that burglary of a dwelling should not be considered a per se crime of violence. Burleson also pointed out that **Brown** was pending before this Court on certiorari review and could be overruled. The trial court acknowledged that **Brown** had not necessarily finally resolved the issue before it. However, finding no authority directly contrary to **Brown**, the trial court ordered that Burleson's indictment be amended to include a habitual-offender enhancement under Section 99-19-83. The trial court also stated that it would revisit the issue at sentencing, in the event that **Brown** was overruled.

¶19. After the jury rendered a guilty verdict, the State and the trial court concluded that the habitual-offender charge would have no affect on Burleson's sentence. Accordingly, Burleson was not sentenced as a habitual offender.

¶20. On appeal, Burleson claims that the trial court erred in amending his indictment to charge him as a habitual offender. First, Burleson argues that burglary of a dwelling is not per se a crime of violence for the purpose of habitual-offender sentencing, and that the State failed to prove that one of his prior convictions was for a crime of violence. He also argues that the amendment of the indictment did not give him fair notice of the charges against him. Finally, he claims that the amendment of his indictment violated his right to testify, his right to assert a theory of defense, and his right to a fair trial, because he would receive the same sentence if found guilty of any lesser felony.

¶21. In order to charge a defendant as a habitual offender under Section 99-19-83 of the Mississippi Code, the State must prove, among other things, that the defendant has a prior felony conviction for "a crime of violence." Miss. Code Ann. § 99-19-83 (Rev. 2007). This

9

Court has held that certain felonies are considered per se crimes of violence, because their essential elements include the use of force or violence against another person. *See*, *e.g.*, ***Magee v. State***, 542 So. 2d 228, 235 (Miss. 1989) (holding that robbery is per se a crime of violence under Section 99-19-83). However, this Court has never held that burglary is per se a crime of violence. On the contrary, in ***Brown v. State***, 102 So. 3d 1087, 1092 (Miss. 2012), this Court held that burglary of a dwelling is *not* per se a crime of violence under Section 99-19-83, and that the State bears the burden of proving that a defendant's prior burglary conviction actually involved violence. Here, the State presented no evidence supporting its allegation that one of Burleson's prior burglaries actually involved violence. By failing to do so, the State did not "allege with particularity the nature or description of the offense constituting the previous convictions" and did not afford Burleson a fair opportunity to present a defense to the habitual-offender charge. URCCC 11.03; URCCC 7.09. With no evidence indicating that one of Burleson's prior burglaries actually involved violence, the trial court erred in amending Burleson's indictment to charge him as a habitual offender under Section 99-19-83.

## II. Whether the trial court erred in admitting a gun introduced in evidence by the State.

¶22. Prior to trial, Burleson filed a motion in limine seeking to exclude certain evidence the State intended to introduce at trial. Included in the evidence sought to be excluded was the handgun found in the car Burleson was driving on the day of his arrest. On the first day of trial, prior to voir dire, Burleson requested the trial court to rule on the admissibility of each piece of evidence listed in the motion in limine, so that the State would not mention any

10

potentially inadmissible evidence to the venire. The State responded that it did not intend to mention any of the contested evidence during voir dire. Burleson's attorney then stated, "Sounds like it obviates the need for a resolution by the Court, and we'll deal with those as the proof arises. Your Honor, those are the only matters we wish to present to the Court before voir dire."

¶23. The State introduced the gun in question twice during trial. First, during Cook's testimony, the State sought to introduce the gun so Cook could identify it as the gun Huguley had taken from her house on the day of Steven's attack. The trial court asked Burleson if he had any objection to the gun's admission, and Burleson responded that he did not. Later, during the testimony of Burleson's arresting officer, the State sought to introduce a photograph of the items found in the car Burleson was driving on the day of his arrest, which depicted the gun. Burleson objected to the admission of the photograph but specifically stated that his objection did not apply to the gun, but to the "remainder of the contents of that photograph." The trial court overruled this objection. The gun was then introduced for the officer to identify, and Burleson again failed to object. At the end of the trial, after both parties had rested, Burleson asked the trial court to make a retroactive ruling excluding the handgun from evidence. The trial court denied Burleson's request. Burleson now argues that the trial court erred in allowing the admission of the gun because it was irrelevant to the alleged offense and was unduly prejudicial.

¶24. We find that Burleson's argument regarding the admission of the gun is procedurally barred, as he failed to pursue his motion in limine to a ruling and failed to raise a

11

contemporaneous objection at trial. "[T]he burden is on the movant to obtain a ruling on a pre-trial motion, and failure to do so constitutes a procedural bar." ***Ross v. State***, 954 So. 2d 968, 992 (Miss. 2007) (citations omitted) (holding that defendant who failed to pursue his motion to suppress a gun to a ruling prior to trial and failed to object to the gun's admission at trial waived his argument regarding the gun's admissibility). *See also* URCCC 2.04. While Burleson filed a motion to exclude the handgun and even raised the issue during a pretrial-motions hearing, he failed to request a ruling on the issue at any point prior to trial. And when the State sought to introduce the gun at trial, Burleson failed to object. "Counsel must object contemporaneously to inadmissible evidence in order to preserve the error for appeal." ***Boyd v. State***, 977 So. 2d 329, 337 (Miss. 2008) (citations omitted). Because Burleson failed to object to the gun's admission at the proper time, we hold that he is procedurally barred from raising this issue on appeal.

¶25. Notwithstanding the procedural bar, we find that Burleson's argument is without merit. "All relevant evidence is admissible, except as provided by the Constitution of the United States, the Constitution of the State of Mississippi, or by [the Mississippi Rules of Evidence]." Miss. R. Evid. 402. Evidence is considered relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Miss. R. Evid. 401. Of course, relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. Miss. R. Evid. 403. "Where a trial court determines that potentially prejudicial evidence possesses

sufficient probative value, it is within that court's sound discretion whether or not to admit same, since M.R.E. 403 does not mandate exclusion but rather provides that the evidence *may* be excluded." **Jones v. State**, 904 So. 2d 149, 152 (Miss. 2005) (citing **Baldwin v. State**, 484 So. 2d 148, 156 (Miss. 2001)).

¶26.    This Court has held that weapons found near the place where the defendant was arrested are admissible, "even where it is not claimed nor proved that they were used in the commission of the alleged crime *in cases where the evidence has probative weight*, or where they constitute a part of the surrounding scene or picture, or are a part of the circumstances of the arrest." **Wilkins v. State**, 264 So. 2d 411, 413 (Miss. 1972) (emphasis added). Here, while the State never argued that the gun was used in the commission of the crime, the gun certainly had other probative value. Huguley and Burleson both were charged as principals in Steven's murder, so the State had the burden of proving either that Burleson committed the crime, or that he aided Huguley in its commission. *See* **Swinford v. State**, 653 So. 2d 913, 915 (Miss. 1995) (citations omitted) ("[A]ny person who is present at the commission of a criminal offense and aids, counsels, or encourages another in the commission of that offense is an 'aider and abettor' and is equally guilty with the principal offender.") Cook testified that Huguley had taken the gun from her house on the day of the crime. Burleson's possession of the gun after the crime corroborated Cartwright's testimony that Burleson was present during the crime. Based on the evidence presented to the trial court, and in light of Burleson's failure to raise a contemporaneous objection, we find that the trial court did not abuse its discretion in admitting the gun into evidence.

13

**III.   Whether the trial judge abused his discretion in failing to give a circumstantial evidence jury instruction.**

¶27.   Prior to trial and during arguments on jury instructions, Burleson requested that the trial court give a so-called "circumstantial-evidence instruction," which instructed the jury that it could not render a guilty verdict unless the State proved his guilt "beyond a reasonable doubt and to the exclusion of every reasonable hypothesis consistent with innocence." After extensive argument on the issue, the trial court denied Burleson's proffered instruction without comment. On appeal, Burleson claims that the trial court erred in declining to give the circumstantial-evidence instruction because the case against him was based entirely on circumstantial evidence.

¶28.   "This court reviews a grant or denial of a jury instruction under an abuse-of-discretion standard. Jury instructions must be read as a whole to determine if they fairly announce the law[.]" *McInnis v. State*, 61 So. 3d 872, 876 (Miss. 2011) (citing *Davis v. State*, 18 So. 3d 842, 847 (Miss. 2009)). The trial court may refuse an instruction which incorrectly states the law, is covered fairly elsewhere in the instructions, or is without foundation in the evidence. *Heidel v. State*, 587 So. 2d 835, 843 (Miss. 1991) (citations omitted). "[W]hen serious doubt exists as to whether an instruction should be included, the doubt should be resolved in favor of the accused." *Davis*, 18 So. 3d at 847 (citing *Stringfellow v. State*, 595 So. 2d 1320, 1322 (Miss. 1992)).

¶29.   This Court previously has defined circumstantial evidence as "evidence which, without going directly to prove the existence of a fact, gives rise to a logical inference that such fact does exist." *Keys v. State*, 478 So. 2d 266, 268 (Miss. 1985). Direct evidence, on

14

the other hand, "must directly and not by inference implicate the accused and not just show that there has been a crime." *Price v. State*, 749 So. 2d 1188, 1194 (Miss. Ct. App. 1999). "While evidence does not always fall neatly into one category, examples of direct evidence include an admission or confession by the defendant to 'a significant element of the offense,' or eyewitness testimony 'to the gravamen of the offense charged.'" *Kirkwood v. State*, 52 So. 3d 1184, 1187 (Miss. 2011) (quoting *Mack v. State*, 481 So. 2d 793, 795 (Miss. 1985)). The term "gravamen" is defined as the "substantial point or essence of a claim, grievance, or complaint." *McInnis*, 61 So. 3d at 876 (quoting *Black's Law Dictionary* 562 (7th ed. 2000)). Where the State "is without a confession and wholly without eyewitness testimony to the gravamen of the offense charged," the defendant is entitled to an instruction requiring the jury to "exclude every other reasonable hypothesis other than that of guilt before a conviction can be had." *Mack*, 481 So. 2d at 795; *Pettus v. State*, 200 Miss. 397, 411, 27 So. 2d 536, 540 (1946).

¶30.    In this case, Burleson did not confess to the crime or admit to any significant element thereof, and the parties dispute whether the State presented direct evidence of the "gravamen" of the offense charged. To secure a conviction for capital murder, the State was required to prove that Burleson and Huguley killed Steven without the authority of law, with or without design to effect his death, while engaged in the commission of a robbery. *See* Miss. Code Ann. § 97-3-19-(2)(e) (Rev. 2014). To prove the underlying robbery, the State was required to show that Burleson and Huguley took Steven's personal property, with felonious intent, in his presence or from his person, against his will, by violence to his person

or by putting him in fear of some immediate injury to his person. *See* Miss. Code Ann. § 97-3-73 (Rev. 2014).

¶31. After a review of the evidence presented at trial, we find that the State failed to present any direct evidence that Burleson killed Steven. Cartwright testified that Steven was still alive when she, Huguley, and Burleson arrived at his house, and she actually entered the house and saw Steven alive. Cartwright did not witness the attack itself, nor did she testify that she was even aware that Steven had been killed. The only other evidence arguably implicating Burleson in the murder was Cartwright's equivocal testimony that she may have seen Burleson leave the house with a metal bar from the Holleys' storm door. While the above testimony may raise a strong *inference* as to what happened inside the Holleys' house on May 15, 2010, direct evidence must "directly and *not by inference* implicate the accused" in the commission of the crime. *Price*, 749 So. 2d at 1194. Because no one witnessed Steven's attack, it cannot be said that the State presented direct evidence that Burleson was a willing participant in the murder.

¶32. Nevertheless, this Court has held that direct evidence of the underlying felony obviates the need for a circumstantial-evidence instruction in capital-murder cases. *See Lynch v. State*, 877 So. 2d 1254, 1265 (Miss. 2004), *post-conviction relief granted in part on other grounds*, *Lynch v. State*, 951 So. 2d 549 (Miss. 2007). In *Lynch*, the defendant was convicted of capital murder during the commission of a robbery. *Lynch*, 877 So. 2d at 1260. The defendant and a cohort had carjacked the victim, and the cohort had fatally shot the victim. *Id*. At trial, the court denied the defendant's request for an instruction he alleged to

16

be "'approximately' the 'two theory' instruction that has been approved and adopted in Mississippi by this Court."[2] *Id.* at 1263. On appeal, this Court affirmed the trial court's denial of the two-theory instruction, holding that the case against the defendant was not entirely circumstantial. *Id.* at 1265. Specifically, this Court found that the defendant had made an "admission against interest as to the underlying felony." *Id.* In his statement to the police, the defendant had admitted that he was aware that his cohort was armed with a handgun and intended to carjack someone. *Id.* at 1266. This Court held that the defendant's statement to the police, while "not a 'confession properly so-called,' still constitutes an admission nevertheless." *Id.* (citing *Mack*, 481 So. 2d at 795). Accordingly, the circumstantial-evidence instruction properly was denied.

¶33. The Court of Appeals also has held that a capital-murder defendant is not entitled to a circumstantial-evidence instruction when the State presents direct evidence of the underlying felony. *Carson v. State*, 125 So. 3d 104 (Miss. Ct. App. 2013). In *Carson*, the defendant was convicted of capital murder with the underlying felony of robbery. *Id.* at 106. On appeal, the defendant argued that the trial court had erred in refusing his proffered circumstantial-evidence instruction, because the State had failed to present direct evidence that he had shot the victim. *Id.* The Court of Appeals rejected this argument, holding that the instruction was not required, because the State had presented direct evidence of the underlying robbery. *Id.* At trial, the victim's neighbor testified that he had seen the

---

[2] The two-theory instruction is a specific type of circumstantial-evidence instruction. *McInnis*, 61 So. 3d at 875. "Although two separate instructions, the rules for when they are appropriately given apply to both." *State v. Rogers*, 847 So. 2d 858, 865 (Miss. 2003).

defendant holding the victim at gunpoint and watched the defendant leave the victim's house in the victim's car shortly thereafter. *Id.* The Court of Appeals found this testimony to be direct evidence of the underlying robbery, an essential element of capital murder, which constituted direct evidence of the "gravamen of the offense charged." *Id.*

¶34. Consistent with the above holdings, we find that the underlying felony in a capital felony-murder charge constitutes the gravamen of the offense of capital murder. Because it elevates an unlawful killing from manslaughter or simple murder to capital murder, the underlying felony constitutes the "substantial point or essence" of a capital-murder charge. *McInnis*, 61 So. 3d at 876. Accordingly, we must determine whether the State presented any direct evidence of a robbery in this case.

¶35. At trial, Cartwright testified that Huguley took a flat-screen TV from the Holleys' house, and that Burleson took a metal bar from the Holleys' house. The State argues that this testimony constitutes direct evidence of the "taking" element of robbery. While this arguably is true, evidence of a mere taking does not constitute the gravamen of the offense of robbery. Robbery includes the elements of larceny, but with the additional element of "force or putting in fear as a means of effectuating the [felonious] intent." *Goff v. State*, 14 So. 3d 625, 647 (Miss. 2009). *Compare* Miss. Code Ann. § 97-3-73 *with* Miss. Code Ann. § 97-17-41 (Rev. 2014). The State was required to prove the elements of robbery, not merely larceny, to obtain a conviction of capital murder. *See* Miss. Code Ann. § 97-3-19(2)(e). Because the State could not prove that a robbery had occurred without presenting evidence of violence or threat of violence, we hold that this element is the gravamen, or "substantial point or essence" of

18

the offense of robbery. *McInnis*, 61 So. 3d at 876. In the instant case, the State presented no eyewitness testimony that Burleson took Steven's personal property from him by violence or by putting him in fear of immediate injury. Cartwright's testimony proved only that Huguley and Burleson had taken items from the Holley's house, and the jury was left to infer from the rest of the evidence how they obtained those items.

¶36. The State argues that, if a circumstantial-evidence instruction is required in this case, then this Court can no longer enforce the "one-continuous-transaction" doctrine in capital-murder cases. This argument is without merit. This Court has held that, in a capital-murder case, the State must prove that the killing and the underlying felony occured as part of a continuous chain of events and part of the *res gestae*. *Batiste v. State*, 121 So. 3d 808, 813 (Miss. 2013). *See also West v. State*, 553 So. 2d 8, 13 (Miss. 1989). But this issue is completely distinct from the issue of whether the evidence of this continuous transaction is direct or circumstantial. If the State attempts to prove, solely by circumstantial evidence, that the defendant killed the victim while engaged in the commission of a robbery, then our precedent requires the trial court to give a circumstantial-evidence instruction.

¶37. We find that State did not present any direct evidence that Burleson committed capital murder with the underlying felony of robbery. Accordingly, the trial court abused its discretion in refusing to give Burleson's proffered circumstantial-evidence instruction. This Court has rejected the proposition that the failure to give such an instruction can be harmless error. *See McInnis*, 61 So. 3d at 875 n.5; *Stringfellow*, 595 So. 2d at 1322. Therefore, Burleson is entitled to a new trial in which the jury is instructed that "every reasonable

19

hypothesis other than that of guilt must be excluded in order to convict." ***Manning v. State***,

735 So. 2d 323, 338 (Miss. 1999).

> **IV.** **Whether the evidence was insufficient to sustain a conviction for capital murder.**

¶38. When a defendant challenges the legal sufficiency of the evidence, "the critical inquiry is whether the evidence shows 'beyond a reasonable doubt that the accused committed the act charged, and that he did so under such circumstances that every element of the offense existed.'" ***Beasley v. State***, 136 So. 3d 393, 401-02 (Miss. 2014) (quoting ***Ivy v. State***, 949 So. 2d 748, 751 (Miss. 2007)). This Court must accept all evidence supporting the guilty verdict as true, and the State must be given the benefit of all reasonable inferences that can be drawn from the evidence. ***McClain v. State***, 625 So. 2d 774, 778 (Miss. 1993). This Court also must disregard evidence favorable to the defendant. ***Noe v. State***, 616 So. 2d 298, 302 (Miss. 1993) (citations omitted). The evidence will be found legally sufficient to affirm the defendant's conviction if "it is of such weight and quality that, 'having in mind the beyond a reasonable doubt burden of proof standard, reasonable fair-minded men in the exercise of impartial judgment might reach different conclusions on every element of the offense." ***Bush***, 895 So. 2d at 843 (quoting ***Edwards v. State***, 469 So. 2d 68, 70 (Miss.1995)). If any reasonable trier of fact could have found the essential elements of the crime beyond a reasonable doubt, this Court will not disturb the jury's verdict. ***Id***. On appeal, Burleson argues that the State presented insufficient evidence that he had robbed or killed Stephen or had aided Huguley in doing so.

¶39. Viewing the evidence in the light most favorable to the jury's verdict, we find that reasonable jurors could find that Burleson committed capital murder with the underlying felony of robbery. The evidence indicates that Steven, Burleson, and Huguley were the only people inside the Holleys' house at the time of Steven's attack. Cartwright testified that she witnessed Burleson leaving the Holleys' house with a metal bar, and Dr. Thomas Deering opined that this bar was consistent with the type of blunt object that caused Steven's fatal injuries. Dr. Deering also testified that Steven's death was a homicide. From these facts, the jury reasonably could infer that Burleson actually killed Steven. "The absence of physical evidence does not negate a conviction where there is testimonial evidence." **Brown v. State**, 130 So. 3d 1074, 1082 (Miss. 2013) (quoting **Graham v. State**, 812 So. 2d 1150, 1153 (Miss. Ct. App. 2002)). Cartwright also testified that either Burleson or Huguley carried a television and other personal property out of the Holleys' house and placed those items in her car. The State presented evidence that Huguley had taken a handgun from Cook's house on the morning of the murder, and the same gun was found in the car Burleson was driving on the day of his arrest. Based on this evidence, the State argued, and the jury reasonably could have inferred, that Burleson and Huguley had a "'community of intent' for the commission of the crime." **Welch v. State**, 566 So. 2d 680, 684 (Miss. 1990) (citing **Malone v. State**, 486 So. 2d 360 (Miss. 1986)). After reviewing the evidence presented in this case, we do not find that a reasonable jury only could have found Burleson not guilty of the charged offense. *See* **Weeks v. State**, 122 So. 3d 373, 379 (Miss. 2013). This argument is without merit.

## CONCLUSION

21

¶40. For the foregoing reasons, we reverse Burleson's conviction and sentence and remand this case to the Prentiss County Circuit Court for a new trial.

¶41. **REVERSED AND REMANDED.**

**DICKINSON, P.J., CHANDLER AND COLEMAN, JJ., CONCUR. KITCHENS, J., CONCURS IN PART AND IN RESULT WITH SEPARATE WRITTEN OPINION JOINED BY KING, J. KING, J., CONCURS IN PART AND IN RESULT WITHOUT SEPARATE WRITTEN OPINION. PIERCE, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY RANDOLPH, P.J., AND LAMAR, J.**

**KITCHENS, JUSTICE, CONCURRING IN PART AND IN RESULT:**

¶42. I agree with the plurality that the trial court erred in not granting Charles Burleson a circumstantial evidence instruction. The prosecution presented no direct evidence of the gravamen of capital murder, and Burleson therefore was entitled to a jury instruction informing the jury that the State must prove the defendant's guilt "beyond a reasonable doubt and to the exclusion of every reasonable hypothesis consistent with innocence." *Leflore v. State*, 535 So. 2d 68, 70 (Miss. 1988); *Montgomery v. State*, 515 So. 2d 845, 848 (Miss. 1987); *Westbrook v. State*, 32 So. 2d 251, 251 (Miss. 1947).

¶43. I also agree with the plurality's well-reasoned analysis that the trial court erred by allowing an amendment to the indictment to charge Burleson as an habitual offender. In Mississippi, criminal defendants accused of felonies have a constitutional right to an indictment supported by probable cause. *See Ginn v. State*, 860 So. 2d 675, 683 (Miss. 2003); Miss Const. art. 3, § 27. It follows that amendments to indictments also must be supported by probable cause. *See Edwards v. State*, 737 So. 2d 275, 293 (Miss. 1999). We have defined probable cause as being "less than evidence which would justify condemnation

22

. . . but more than bare suspicion." ***Powe v. State***, 235 So. 2d 920 (Miss. 1970) (internal citations omitted). Thus, the question concerning the legitimacy of this amendment to the indictment turns on whether it was supported by probable cause. In order to prosecute a criminal defendant as an habitual offender under Section 99-19-83 of the Mississippi Code, the State must prove that the defendant previously has been convicted of two felonies. One of those two felonies must have been for a "crime of violence." Miss. Code Ann. § 99-19-83 (Rev. 2007). Here, the State submitted proof that Burleson previously had been convicted of five burglaries. In ***Brown***, we held that a burglary conviction is not *per se* a crime of violence. ***Brown v. State***, 102 So. 3d 1087, 1091 (Miss. 2012). Proof of a prior burglary conviction therefore does not provide probable cause to amend an indictment under Section 99-19-83. Turning to the proof that the prosecution submitted to support amendment of the indictment of this case, it is clear that none of that evidence established that Burleson previously had been convicted of any violent crime. Thus, the amendment to the indictment was supported by nothing other than the prosecutor's unsupported assertion that "[a]t least one of the foregoing convictions was for a crime of violence . . . ." A prosecutor's unsubstantiated assertions do not give rise to probable cause, and it is clear that the amendment to the indictment here is unconstitutional in that it is unsupported by probable cause. Miss. Const. art. 3, § 27.

¶44. Because, however, the trial court also erred by failing to exclude the gun from evidence, I concur only in part and in the result reached by the plurality.

## A. The Handgun

¶45. Prior to trial, Burleson's counsel filed a motion *in limine* seeking to exclude the handgun found in the car Burleson was driving on the day of his arrest. The State then assured the trial court that "the gun will be linked to other testimony not to – to the capital murder via the robbery which occurred and things that followed this event . . . ." The State never made good on this promise.

¶46. Rule 402 of the Mississippi Rules of Evidence warns that "[e]vidence which is not relevant is not admissible." Relevant evidence is defined as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." M.R.E. 401. Here, it is indisputable that the handgun had no connection to the crime charged in the indictment and that the prosecution never proved that it did. In effect, the State displayed a handgun to the jury during the guilt phase of Burleson's murder trial. There was no proof that the decedent was shot or that he ever saw this weapon. Burleson objected to the admissibility of the handgun and was irrevocably prejudiced by its admission.[3]

¶47. Also, we should not consider the handgun in a vacuum. Not only did it have nothing to do with the alleged crime, it also was exhibited during a trial in which the court did not submit a circumstantial evidence instruction to the jury. Thus, whatever harm the irrelevant weapon inflicted upon the fairness of Burleson's trial was made worse by the absence of a circumstantial evidence instruction.

---

[3] The presence of the gun was so prejudicial and irrelevant that it likely confused the jury. In fact, in its brief submitted to this Court, the State itself gets confused about the importance of the handgun, opining "[t]his case arises from the May 15, 2010, shooting death of Stephen Holley, in Prentiss County, Mississippi."

¶48. Ultimately, the handgun was patently irrelevant, and its admission, despite Burleson's well-pled motion *in limine*, prejudiced Burleson's defense. Thus, while agreeing with the plurality that the trial court erred by refusing to instruct the jury regarding circumstantial evidence and by allowing the prosecution to charge Burleson as an habitual offender under Section 99-19-83, I concur in part and in result only.

**KING, J., JOINS THIS OPINION.**

**PIERCE, JUSTICE, DISSENTING:**

¶49. Respectfully, I dissent from the plurality's decision to reverse Charles David Burleson's conviction for failure to grant a circumstantial-evidence instruction. As previous members of this Court have recognized and expressed, this instruction is a mere restatement of the reasonable-doubt burden of proof and serves no real purpose, and I am in accord with those who have called for its abolition. *See Mack v. State*, 481 So. 2d 793, 796 (Miss. 1985) (Robertson, J., concurring); *Montgomery v. State*, 515 So. 2d 845, 849 (Miss. 1987) (Robertson, J., concurring); *King v. State*, 580 So. 2d 1182, 1192 (Miss. 1991) (Banks, J., concurring); *Stringfellow v. State*, 595 So. 2d 1320, 1322 (Miss. 1992) (Pittman, J., concurring).

¶50. Criticism of the instruction is best summarized in Justice Robertson's concurring opinion in *Mack*, in which he opined:

> Upon reflection, it seems that the circumstantial evidence instruction and the many battles this Court has fought regarding when it should be given may in reality be much ado about nothing. If an accused's guilt is established to the exclusion of every reasonable hypothesis consistent with innocence, then it

25

may be said that he has been found guilty beyond a reasonable doubt. Conversely, if the evidence has not excluded from the juror's mind a reasonable hypothesis consistent with innocence, it follows that the State has not established guilt beyond a reasonable doubt. After all, what – and all – that is constitutionally required is that the accused's guilt be established beyond a reasonable doubt, period. *See Jackson v. Virginia*, 443 U.S. 307, 315, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979).

*Mack*, 481 So. 2d at 797 (Robertson, J., concurring) (emphasis in original).

¶51. Indeed, the United States Supreme Court has rejected the notion that a circumstantial-evidence instruction must be given in any criminal case lacking direct evidence. *Holland v. U.S.*, 348 U.S. 121, 75 S. Ct. 127, 99, L. Ed. 150 (1954). In *Holland*, the Court held that "the better rule is that where the jury is properly instructed on the standards of reasonable doubt, such an additional instruction on circumstantial evidence is confusing and incorrect." *Id.* at 140 (citations omitted). The Court reasoned:

Circumstantial evidence in this respect is intrinsically no different from testimonial evidence. Admittedly, circumstantial evidence may in some cases point to a wholly incorrect result. Yet this is equally true of testimonial evidence. In both instances, a jury is asked to weigh the chances that the evidence correctly points to guilt against the possibility of inaccuracy or ambiguous inference. In both, the jury must use its experience with people and events in weighing the probabilities. If the jury is convinced beyond a reasonable doubt, we can require no more.

*Id.*

¶52. In reliance on *Holland*, the federal courts have abolished any distinctions between direct and circumstantial evidence, both in addressing jury instructions and in judging the sufficiency of the evidence.[4] A majority of the states have followed suit.[5] Review of the

---

[4] *See U.S. v. Johnson*, 713 F.2d 633, 653 (11th Cir. 1983); *U.S. v. Atnip*, 374 F.2d 720, 722 (7th Cir. 1967); *Wood v. U.S.*, 361 F.2d 802, 806 (8th Cir. 1966); **Dirring v. U.S.**, 328 F.2d 512, 515 (1st Cir. 1964); *Strangway v. U.S.*, 312 F.2d 283, 285 (9th Cir. 1963);

decisions of other jurisdictions applying *Holland* reveals several compelling concerns with

the instruction.

---

*Hunt v. U.S.*, 316 F.2d 652, 654 (D.C. Cir. 1963); *U.S. v. Thomas*, 303 F.2d 561, 563 (6th Cir. 1962); *U.S. v. Moia*, 251 F.2d 255, 258 (2d Cir. 1958); *Corbin v. U.S.*, 253 F.2d 646, 649 (10th Cir. 1958);*U.S. v. Allard*, 240 F.2d 840, 841 (3d Cir. 1957); *Brewer v. U.S.*, 224 F.2d 189, 191 (5th Cir. 1955).

[5] *See State v. Logan*, 747 S.E.2d 444, 452 (S.C. 2013) (requiring trial courts to give a jury instruction that defines direct and circumstantial evidence, explains that neither category of evidence is entitled to greater weight, and imposes the reasonable-doubt burden of proof); *State v. Dorantes*, 331 S.W.3d 370 (Tenn. 2011); *Ex parte Carter*, 889 So. 2d 528 (Ala. 2004); *State v. Humpherys*, 8 P.3d 652 (Idaho 2000); *State v. Guthrie*, 194 S.E.2d 163 (W. Va. 1995); *State v. Grim*, 854 S.W.2d 403 (Mo. 1993); *State v. Jenks*, 574 N.E.2d 492, 503 (Ohio 1991), *superseded by constitutional amendment on other grounds as stated in State v. Smith*, 684 N.E.2d 668 (Ohio 1997); *Commonwealth v. Sanders*, 551 A.2d 239 (Pa. Super. 1988); *People v. Bryant*, 499 N.E.2d 413 (Ill. 1986); *State v. Adcock*, 310 S.E.2d 587 (N.C. 1984); *Hankins v. State*, 646 S.W.2d 191 (Tex .Crim. App.1983); *State v. Smith*, 434 A.2d 664, 668 (Conn. 1981); *State v. Derouchie*, 440 A.2d 146 (Vt. 1981); *Matter of Use by Trial Courts of Standard Jury Instructions in Criminal Cases*, 431 So. 2d 594 (Fla. 1981);*State v. Eagle*, 611 P.2d 1211 (Utah 1980);*State v. Turnispeed*, 297 N.W.2d 308 (Minn. 1980); *State v. O'Connell*, 275 N.W.2d 197 (Iowa 1979); *State v. Roddy*, 401 A.2d 23 (R.I. 1979); *State v. Bell*, 560 P.2d 925 (N.M. 1977); *State v. Bush*, 569 P.2d 349 (Haw. 1977); *State v. Cowperthwaite*, 354 A.2d 173 (Me.1976); *Bails v. State*, 545 P.2d 1155 (Nev. 1976); *State v. Gosby*, 539 P.2d 680 (Wash. 1975); *Blakely v. State*, 542 P.2d 857 (Wyo.1975); *People v. Austin*, 523 P.2d 989 (Colo. 1974); *State v. Draves*, 524 P.2d 1225 (Or. App. 1974);*State v. Wilkins*, 523 P.2d 728 (Kan. 1974); *Henry v. State*, 298 A.2d 327 (Del.1972); *Murray v. State*, 658 S.W. 2d 438, 442-43 (Ark. 1971), *but see Ward v. State*, 658 S.W.2d 379 (Ark. 1983); *State v. Harvill*, 476 P.2d 841 (Ariz. 1970); *Allen v. State*, 420 P.2d 465 (Alaska 1966); *State v. Ray*, 202 A.2d 425 (N.J. 1964); *Holland v. Commonwealth*, 323 S.W.2d 411 (Ky.1959). *See also Hebron v. State*, 627 A.2d 1029 (Md. 1993) (holding that the "reasonable hypothesis" test is a matter of evidentiary sufficiency to be determined by the court, and not the proper subject of jury instructions); *People v. Seabrooks*, 354 N.W. 2d 374 (Mich. App. 1984) (holding that a circumstantial-evidence instruction should be given only "where the circumstantial evidence against the defendant is weak."); *Johnson v. State*, 632 P.2d 1231 (Okl. Crim. App.1981) (holding that the "reasonable hypothesis" test may be used by the court in testing the sufficiency of the evidence, but that it should be included in the jury instructions only to cure some other grossly misleading instruction).

¶53. First, due to the difficulty of identifying certain evidence as "circumstantial" or "direct," courts have long struggled to identify accurately the circumstances in which rules regarding circumstantial evidence should be applied. More than twenty years ago, Justice Robertson noted that "[c]areful, but not exhaustive, research" revealed eighteen different articulations of the test for determining when the circumstantial-evidence instruction should be given. *See Montgomery*, 515 So. 2d at 849-50. While this Court recently has endeavored to establish a more uniform rule, *see Kirkwood*, 52 So. 3d at 1186-87; *McInnis*, 61 So. 3d at 876, it is beyond argument that "evidence in criminal cases does not fit into two nice, neat, mutually exclusive categories: direct and circumstantial. There are too many shades of gray. Most trials are full of evidence from one end of the spectrum to the other." *Keys v. State*, 478 So. 2d 266, 268 (Miss. 1985).

¶54. Once a court has undertaken the complicated, and in some cases impracticable, task of determining whether a circumstantial-evidence instruction is warranted, another problem arises. The simple act of giving the instruction in one class of cases, but not in others, erroneously implies that there is a legally significant distinction between circumstantial and direct evidence. The *Holland* Court confirmed that these categories of evidence are "intrinsically no different." *Holland*, 348 U.S. at 140.

¶55. Mississippi already follows the above line of reasoning. Under this Court's precedent, "[c]ircumstantial evidence is entitled to the same weight and effect as direct evidence and this Court has upheld convictions based solely on circumstantial evidence." *Cardwell v. State*, 461 So. 2d 754, 761 (Miss. 1984) (citations omitted). *See also Bogard v. State*, 233

So. 2d 102, 105 (Miss. 1970) (citations omitted) ("[I]t has been held generally and also by this Court that circumstantial evidence is not inferior to direct evidence when all of the facts are considered.").

¶56.    Burleson argues that, while direct and circumstantial evidence may have equal probative value in some cases, the manner in which the jury analyzes the evidence is different.  No, not really, as the Honorable Learned Hand recognized even prior to ***Holland***:

> All conclusions have implicit major premises drawn from common knowledge; the truth of testimony depends as much upon these, as do inferences from events.  A jury tests a witness's credibility by using their experience in the past as to similar utterances of persons in a like position.  That is precisely the same mental process as when they infer from an object what has been its past history, or from an event what must have proceeded [sic] it.  All that can be asked is that the importance of the result to the accused shall demand a corresponding certainty of his guilt; and this is commonly and adequately covered by telling them that the conclusion shall be free from fair doubt.  To elaborate this into an inexorable ritual, or to articulate it for different situations, is more likely to impede, than to promote, their inquiry.

***U.S. v. Becker***, 62 F.2d 1007, 1010 (2d Cir. 1933).  The circumstantial-evidence instruction does not instruct the jury in any way concerning the differences between the two categories of evidence or how to analyze them.  The circumstantial-evidence instruction "only serves to confuse laymen into supposing that they should use circumstantial evidence otherwise than testimonial."  ***State v. Harvill***, 476 P.2d 841, 844 (Ariz. 1970) (quoting ***Becker***, 62 F.2d at 1010).

¶57.    In my opinion, the most problematic aspect of the instruction is that the additional "reasonable hypothesis" language suggests to the jury that the State is held to a distinct and higher burden of proof in cases lacking a confession from the defendant or eyewitness

29

testimony to the gravamen of the offense. This implicates not only the jury's duty as the trier of facts at trial, but this Court's responsibility to judge the sufficiency of the evidence on appeal. The United States Supreme Court has rejected the notion that the burden of proof is somehow heightened in "circumstantial-evidence cases," holding that, in all criminal cases, the Constitution requires that the prosecution must establish all elements of the offense against the accused beyond a reasonable doubt. *See* *Jackson*, 443 U.S. at 315; *In re Winship*, 397 U.S. 358, 364, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970). "Indeed, so long as the court instructs the jury on the necessity that the defendant's guilt be established beyond a reasonable doubt, . . . the Constitution does not require that any particular form of words be used in advising the jury of the government's burden of proof." *Victor v. Nebraska*, 511 U.S. 1, 5, 114 S. Ct. 1239, 127 L. Ed. 2d 583 (1993) (citations omitted). Even in jurisdictions where the instruction has not yet been abolished, courts are in agreement that the level of proof necessary to convict a defendant is not affected merely by the categories of evidence presented at trial. *See, e.g.*, *Brown v. State*, 391 S.E.2d 108, 110 n.2 (Ga. 1990) (rejecting defendant's argument that Georgia's statutory circumstantial-evidence rule imposes a stricter standard of review, and recognizing that "in order for wholly circumstantial evidence to authorize a rational trier of fact in finding the defendant guilty beyond a 'reasonable' doubt, it would have to exclude every 'reasonable' hypothesis save that of guilt"); *State v. Wright*, 445 So. 2d 1198 (La. 1984) (holding that Louisiana's statutory circumstantial-evidence rule does not create a standard separate from *Jackson v. Virginia*, but is an evidentiary guideline to facilitate appellate review of whether a reasonable

juror could have found a defendant guilty beyond a reasonable doubt); ***People v. Towler***, 641 P.2d 1253, 1259-60 (Cal. 1982) (holding that the circumstantial-evidence instruction is "primarily for the guidance of the trier of fact" and does not create a stricter standard of review in circumstantial-evidence cases).

¶58.    In accord with this reasoning, this Court has recognized that instructing the jury only on the reasonable-doubt standard is, "practically speaking, no less stringent than a circumstantial instruction requiring the jury to find the accused's guilt beyond a reasonable doubt and 'to the exclusion of every reasonable hypothesis other than that of guilt." ***Stringfellow***, 595 So. 2d at 1322 (emphasis added). The majority in ***Stringfellow*** shared Justice Robertson's criticism in ***Mack*** that "[i]f a juror has a reasonable doubt of the defendant's guilt, certainly there is a reasonable hypothesis consistent with innocence." ***Id.*** Thus, the addition of a circumstantial-evidence instruction "suggests that a unique standard governs cases in which the evidence of guilt is entirely circumstantial, that the burden of proof in those cases is different in some fundamental respect." ***People v. Bryant***, 499 N.E. 2d 413, 419 (Ill. 1986). "Rather than aiding jurors in applying the reasonable doubt standard, an additional charge on circumstantial evidence focusing on the 'reasonable hypothesis' theory serves only to distract jurors from examining the proper standard of proof as the primary focus of their deliberations." ***Hankins v. State***, 646 S.W. 2d 191, 1999 (Tex. Ct. Crim. App. 1981).

¶59.    Today, I would clarify for our jurisprudence that one standard of proof applies in all criminal cases in Mississippi: the State bears the burden of proving every element of the

31

offense beyond a reasonable doubt.[6] *See **Winship***, 397 U.S. at 364; ***Jackson***,  443 U.S. at 318-19.   The reasonable-hypothesis "standard" found in our circumstantial-evidence instruction merely repeats the proper burden of proof in different terms, and the instruction impermissibly attempts to add vocabulary to the reasonable-doubt standard.  "The beyond a reasonable doubt standard is a requirement of due process, but the Constitution neither prohibits trial courts from defining reasonable doubt nor requires them to do so as a matter of course."  ***Victor***, 511 U.S. at 5.  Antithetically, this Court has long prohibited the lower courts of this State from attempting to define the term "reasonable doubt" through jury instructions, finding that the term is "obscure and it must be assumed that the members of the jury were men of ordinary intelligence and capable of understanding their meaning."  ***Cannon v. State***, 190 So. 2d 848, 851 (Miss. 1966).  Distinctions among "reasonable doubt, all possible doubt, beyond a shadow of a doubt, and the like," are not properly the subject of jury instructions.  ***Heidelberg v. State***, 584 So. 2d 393, 396 (Miss. 1991).  Reasonable doubt is synonymous with a reasonable hypothesis other than that of guilt, and this Court's

---

[6] In so holding, we reject Burleson's argument that the Court of Appeals has held that the reasonable-hypothesis "standard" is distinct from the general reasonable-doubt standard. *See **State v. McMurry***, 906 So. 2d 43, 47 (Miss. Ct. App. 2004).  In ***McMurry***, the State appealed the defendant's acquittal, arguing that the trial court erred in giving what was essentially a circumstantial-evidence instruction.  The Court of Appeals held that the instruction should not have been given because the evidence against the defendant was not entirely circumstantial. *Id.* The Court of Appeals rejected the defendant's argument that the instruction was a reasonable-doubt instruction, noting that "the standard reasonable doubt instruction does not require examination of every reasonable hypothesis other than that of guilt." *Id.*  But the Court of Appeals did not hold that the "reasonable hypothesis" language in the defendant's instruction imposed a higher burden of proof.  Rather, the Court of Appeals merely recognized that the Mississippi Model Jury Instruction for reasonable doubt, unlike the defendant's proffered instruction, did not include the "reasonable hypothesis" language. *See id.*

32

continued support of the circumstantial-evidence instruction contradicts our own admonition that reasonable doubt should not be defined by the courts.

¶60.    Burleson urges this Court to refrain from joining the growing number of jurisdictions that have abolished the circumstantial-evidence instruction, arguing that an important distinction exists in *Holland* that diminishes its persuasive power to this Court.   Burleson points out that the *Holland* Court's holding was based on a federal rule entitling a criminal defendant to a jury instruction defining the term "reasonable doubt."  *See Holland v. U.S.*, 209 F.2d 516, 523 (10th Cir. 1954).  Because the jury in *Holland* was "properly instructed on the standards of reasonable doubt" in accordance with this rule, the Court held that no further instruction was  required.  *Holland*, 348 U.S. at 140.  Burleson claims that, because Mississippi courts do not give definitional instructions on reasonable doubt, *Holland* should have no bearing on this Court's decision regarding the propriety of the circumstantial-evidence instruction.

¶61.    As stated above, courts are neither prohibited from nor required to define the reasonable-doubt standard. *Victor*, 511 U.S. at 5.  Rather, as the *Holland* Court held, "taken as a whole, the instructions [must] correctly conve[y] the concept of reasonable doubt to the jury." *Holland*, 348 U.S. at 140.  In abolishing its circumstantial-evidence instruction, the Supreme Court of Illinois rejected an argument identical to the one presented by Burleson, holding:

> We are not persuaded that in the absence of a definition of reasonable doubt the "reasonable theory of innocence" charge must be retained as a sort of proxy for a definition of that term.  The question whether the instruction should be retained is, we believe, distinct from the question of whether

33

reasonable doubt must be defined. We do not consider here whether an instruction defining reasonable doubt is necessary; if one were required, we see no reason why the same definitional instruction would not be used in all cases, no matter whether the evidence of guilt was wholly direct, wholly circumstantial, or a mixture of the two. Thus, no purpose is served by preserving here, for this category of cases, an instruction that is at once obscure and misleading.

*Bryant*, 499 N.E.2d at 419-20. I find the *Bryant* Court's reasoning persuasive. As stated above, the State's burden of proof remains the same in all cases regardless of whether it produces direct evidence of the crime. Because an additional circumstantial-evidence instruction is required only in certain classes of cases, without explanation to the jury, it is both duplicitous and misleading.

¶62. While I remain adherent and reverential to *stare decisis*, the careful and thoughtful analysis of other courts addressing this issue leads me to the conclusion that the circumstantial-evidence instruction serves no legitimate purpose and should no longer be used. Abolishing the circumstantial-evidence instruction will serve the beneficial purpose of eliminating the "aggregate hodgepodge" of precedent attempting to explain when the instruction is warranted. *See Montgomery*, 515 So. 2d at 849 (Robertson, J., concurring). It also will "promote uniformity and eliminate the endless arguments over whether a case is circumstantial or direct." *King*, 580 So. 2d at 1195 (Banks, J., concurring). And, most importantly, it will establish consistency in this Court's review of the sufficiency of the evidence in all criminal cases.

¶63. Here, Burleson's proffered instruction did not provide any legally significant information that was not covered elsewhere in the instructions actually given to the jury. All

of the evidence presented against him, whether direct or circumstantial, was entitled to the same weight and effect. The jury was properly instructed on the presumption of innocence and the State's burden of proving every material element of the crime charged beyond a reasonable doubt. The jury also was instructed that a reasonable doubt could arise from a lack of evidence, insufficiency of the evidence, or a conflict in evidence. Having been so instructed, it was the jury's duty to determine, based on all the evidence presented, whether the evidence established each element of the offenses charged beyond a reasonable doubt.

¶64. I see no logical reason to continue to require trial courts to give an instruction that provides the jury with no legally relevant information, but serves only to confuse the jury's duty as the finder of fact. For these reasons, I would abolish the so-called circumstantial-evidence instruction. And I would find Burleson's assignment of error to be without merit.

¶65. Lastly, I would not address Burleson's claim that the trial court erred in allowing the State to amend the indictment to include habitual-offender status under Mississippi Code Section 99-19-83 (Supp. 2014). There is no controversy for our review since the State withdrew the habitual-offender charge. And this Court does not issue advisory opinions. *Nelson v. State*, 72 So. 3d 1038, 1045 (Miss. 2011).

**RANDOLPH, P.J., AND LAMAR, J., JOIN THIS OPINION.**