# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2016-KA-01020-SCT

*XAVIER COLLINS JOHNSON a/k/a XAVIER JOHNSON*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 12/02/2015 |
| TRIAL JUDGE: | HON. JOHN HUEY EMFINGER |
| TRIAL COURT ATTORNEYS: | GREGORY MILES |
| | JOHN K. BRAMLETT, JR. |
| | L. ABRAHAM ROWE, JR. |
| | HEATHER MARIE ABY |
| | WESLEY THOMAS EVANS |
| COURT FROM WHICH APPEALED: | MADISON COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | OFFICE OF THE STATE PUBLIC DEFENDER |
| | BY: ERIN E. BRIGGS |
| | GEORGE T. HOLMES |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: KATY GERBER |
| DISTRICT ATTORNEY: | MICHAEL GUEST |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 12/07/2017 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**CHAMBERLIN, JUSTICE, FOR THE COURT:**

¶1. A Madison County jury convicted Xavier Collins Johnson of (1) burglary of a

dwelling; (2) aggravated assault; and (3) conspiracy to commit credit-card fraud. The trial

judge sentenced Johnson as a habitual offender under Mississippi Code Section 99-19-81

(Rev. 2015), and Johnson's sentences for the burglary and assault counts were enhanced because the victim was over the age of sixty-five. Johnson appeals, raising seven issues. We affirm Johnson's convictions for the reasons provided herein.

## FACTS AND PROCEDURE

¶2.     Bobby and Ann Hall (Mr. and Mrs. Hall) were an elderly couple, in their seventies, residing in the city of Canton.  On July 30, 2014, following his daily routine, Mr. Hall awoke at 5:30 a.m., turned on the coffee pot and went outside to get the newspaper.  Mr. Hall does not remember anything after he went outside to get the newspaper.  Mrs. Hall awoke at 6:15 a.m., and she went to the kitchen.  Although she noticed that the newspaper was still in the driveway, she believed  her husband was in the garden.  She then proceeded to get dressed, and when she returned to the kitchen and picked up her purse, she noticed it was lighter than usual.  Suspecting that something was wrong, Mrs. Hall  began searching for Mr. Hall, and upon walking outside, she found him lying in the driveway with a bloody face.  Mr. Hall had a pulse but was unresponsive.  Mrs. Hall also saw her credit cards scattered across the driveway.

¶3.     After Mrs. Hall called 911, Mr. Hall was airlifted to University of Mississippi Medical Center where he was diagnosed with a traumatic brain injury, which was consistent with an assault.  Mr. Hall remained in a coma for five weeks, and he returned home three months after the incident.  He can no longer drive his truck or RV and is unable to walk without the assistance of a cane.

¶4.     The credit-card company notified Mrs. Hall of several fraudulent charges, and she forwarded this information to law-enforcement officials.  After an investigation, the police arrested Ashley Williams for the fraudulent use of Mrs. Hall's credit card.[1]  Williams first told police officials that she had found the card in a crack in her house, but she later admitted that Xavier Johnson had given her the card.  According to Williams, Johnson had told her that the card had belonged to his girlfriend and that he wanted to help her out.  Johnson, however, requested half of the cash Williams could retrieve from the card.

¶5.     Law-enforcement officials arrested Johnson on August 4, 2014.  Nine months later, on May 6, 2015, Johnson was indicted for: (1) burglary of a dwelling, in violation of Mississippi Code Section 97-17-23 (Rev. 2014); (2) aggravated assault, in violation of Mississippi Code Sections 97-3-7(2)(a)(i) (Supp. 2016) and 97-3-7(14)(c) (Supp. 2016); and (3) conspiracy to commit credit-card fraud, in violation of Mississippi Code Sections 97-19-21 (Rev. 2014) and 97-1-1 (Rev. 2014).  The grand jury also indicted Johnson as a habitual offender and subjected him to enhanced punishments for the burglary and aggravated-assault counts.  Johnson waived arraignment, was appointed counsel, and pleaded not guilty.

¶6.     In August 2015, Investigator Robert Winn of the Madison County District Attorney's Office conducted a search of Velma Glass's home.  Glass is Johnson's grandmother, and Johnson lived with Glass prior to his arrest.  Winn did not have a warrant to search Glass's

---

[1]The name on the stolen card was "Ann P. Hall."*See* Exhibit 4. The police also arrested Williams's sister, Kimberly Williams, for fraudulent use of Ms. Hall's credit card.

house, but, according to Winn, Glass permitted him to search her home upon request. During the search, Winn collected numerous articles of clothing that belonged to Johnson, including a pair of black Nike shoes. A forensic DNA analyst tested the items collected and found the presence of human blood on the right Nike shoe. The analyst also made a DNA comparison of the blood to a buccal swab taken from Mr. Hall and confirmed that the blood on the shoe was from Mr. Hall.

¶7. On November 30, 2015, Johnson's jury trial commenced. Mr. Hall testified that Johnson previously had been to his house on several occasions. One week before the incident, Johnson had helped Mr. Hall move a freezer and some cabinets out of his house. On the day before the attack on Mr. Hall, Johnson washed and waxed half of Mr. Hall's RV. Johnson was supposed to return the next day to finish the other half.

¶8. The State also called Williams to testify. In addition to testifying about the above-mentioned statements she gave to the police, Williams stated that Johnson had borrowed her car the night before the assault on Mr. Hall, and Johnson had agreed to take Williams's mother to work at 6:00 a.m. the next morning. When Johnson arrived at Williams's house, she stated that he "was looking sweaty and nervous and he [sic] shaking his right hand." Johnson then asked for baby wipes and used them to wipe blood off his right knuckles. Williams further testified that Johnson had blood on his right sock and foot. Williams told the jury that Johnson took off black Nike shoes, threw his socks away, and put his shoes back

4

on. [2] Williams also testified about a conversation she had with Johnson prior to trial when the two were in the same police car on the way to court. Williams asked Johnson why he had placed Mr. and Mrs. Hall's cell phones under her house, to which Johnson responded: "I shouldn't have done it."[3] Later when Williams and Johnson were at the courthouse, Johnson told Williams: "[I]f his wife would have woke up, [I] would have shot her in the head[.]"

¶9.     After closing arguments, Johnson requested a two-theory jury instruction, which the trial judge refused. The jury subsequently convicted Johnson on all three counts. Johnson was sentenced to fifty years for the burglary, forty years for the aggravated assault, and five years for the conspiracy to commit credit-card fraud, each sentence to run consecutively. Johnson filed a motion for a new trial or, alternatively, for judgment notwithstanding the verdict, which the trial judge also denied. Johnson appealed.

## STATEMENT OF THE ISSUES

¶10.    Johnson raises seven issues on appeal, two through appointed counsel from the Indigent Appeal Division of the Office of the State Public Defender, and five through a *pro se* supplemental brief. The issues have been restated for clarity.

> I.      Whether the evidence was sufficient to support the breaking element of Johnson's burglary conviction.
>
> II.     Whether the trial judge abused his discretion by failing to grant Johnson's requested two-theory jury instruction.

---

[2]The bloody socks were not introduced into evidence.

[3]Mr. and Mrs. Hall's cell phones were not submitted into evidence at trial.

5

III.     Whether Johnson's counsel was ineffective.

IV.     Whether the indictment is void due to failure to charge Johnson with an essential element of the statute and/or crime, and whether the statutes are vague, ambiguous, or unconstitutional as applied.

V.     Whether Johnson was denied his due-process right to an initial appearance according to Rule 6.03 of the Uniform Rules of Circuit and County Court Practice.

VI.     Whether Johnson was denied his due-process right to an arraignment according to Rule 8.01 of the Uniform Rules of Circuit and County Court Practice.

VII.     Whether Johnson's speedy-trial rights were violated.

## DISCUSSION

**I.     Whether the evidence was sufficient to support the breaking element of Johnson's burglary conviction.**

¶11.    Johnson, through counsel, first asserts that the State failed to provide sufficient evidence for the "breaking" element of his burglary conviction. Johnson argues that there was no testimony about whether Mr. Hall closed the door on his way to get the newspaper. If Mr. Hall had left the door open and Johnson had walked through the open door, Johnson claims that the breaking element could not be satisfied absent a finding of "constructive" breaking. Finally, Johnson asserts there is no evidence of constructive breaking because "there is no one that Johnson could have threaten, [sic] deceived, or tricked into allowing him permission into the home."

¶12.    The standard of review for a challenge to the sufficiency of the evidence is de novo. ***Brooks v. State***, 203 So. 3d 1134, 1137 (Miss. 2016). In applying de novo review, we

6

determine "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* (quoting *Warren v. State*, 187 So. 3d 616, 627 (Miss. 2016)). The State is given the benefit of "all reasonable inferences that may be drawn" from the evidence. *Warwick v. State*, 179 So. 3d 1069, 1073 (Miss. 2015).

¶13.    Mississippi Code Section 97-17-23(1) sets out the elements the State must prove to convict a defendant of burglary. Those elements are: (1) the unlawful *breaking* and entering of a dwelling and (2) the intent to commit some crime therein. Miss. Code Ann. § 97-17-23(1) (Rev. 2014). "'[B]reaking' can be actual or constructive." *Templeton v. State*, 725 So. 2d 764, 766 (Miss. 1998).

¶14.    This Court has defined actual breaking as "any act or force, however, slight, 'employed to effect an entrance through any usual or unusual place of ingress, whether open, partly open, or closed.'" *Id*. (quoting *Smith v. State*, 499 So. 2d 750, 752 (Miss. 1986)). Constructive breaking occurs when entrance is "obtained in consequence of violence commenced or threatened by defendant." *Id.* (quoting *Smith*, 499 So. 2d at 752-53); *see also Ross v. State*, 603 So. 2d 857, 865 (Miss. 1992) ("Constructive breaking may occur when a defendant gains entry by becoming violent or threatening violence."). Additionally, constructive breaking may be found "where an entry is effected by fraud or intimidation." *Id*. (citing *Holderfield v. State*, 61 So. 2d 385, 386 (Miss. 1952)).

¶15.    Johnson points to a Court of Appeals decision for the proposition that "the mere act of walking through a raised, open garage door does not constitute an 'act or force, however

slight, employed to effect an entrance' and is not a 'breaking.'"[4] ***Ladd v. State***, 87 So. 3d 1108 (Miss. Ct. App. 2012). He then correlates the facts at hand to those from ***Ladd***, concluding that "walking through an open-door is not, by itself, sufficient force to constitute a breaking."

¶16.    While no evidence was presented supporting the proposition that Mr. Hall left the door *open* when he went to fetch the newspaper, the same can be said about whether Mr. Hall *closed* the door. However, regardless of whether Johnson entered an open, shut, or partially closed door, sufficient evidence was presented to show a constructive breaking. In ***Christmas v. State***, this Court found that "[b]y holding a gun to [the victim's] head and forcing her into the home, [the defendant] met Mississippi's established standard for constructive breaking[.]" ***Christmas v. State***, 10 So. 3d 413, 422 (Miss. 2009). Further, in ***Ross***, this Court stated:

> Either Ross's brandishing of a weapon, (threatening violence), or grabbing and pushing the complainant (actual force), satisfies the element of breaking and entering. It does not matter how much Johnson had opened the door to speak with Ross. She did not let him in. He forced his way in.

***Ross***, 603 So. 2d at 856. Thus, aside from considering whether an access to the home was open or closed, this Court has stated numerous times that actual force or threatening violence constitutes a constructive breaking. *See **id.***; *see also **Christmas***, 10 So. 3d at 422.

---

[4]A majority of the Court agreed with this conclusion in ***Ladd***. *See **Watson v. State***, 123 So. 3d 446 (Miss. 2013) ("We agree with the Court of Appeals in ***Ladd***, that merely walking through an open door does not satisfy the 'breaking' requirement for burglary of a dwelling.").

¶17. The ***Christmas*** Court went on to state that a specific definition of constructive breaking was not required, whereby "an instruction on the constituent elements of burglary" was given. ***Id.*** at 422. The ***Christmas*** Court further held that "instructions in a criminal case which follow the language of a pertinent statute are sufficient." ***Christmas***, 10 So. 3d at 422 (quoting ***Rubenstein v. State***, 941 So. 2d 735, 772 (Miss. 2006) (internal quotations omitted)).

¶18. Here, the jury instruction on breaking followed verbatim the language cited and upheld by the ***Christmas*** Court. *See* ***Christmas***, 10 So. 3d at 422. The instruction defined a breaking as ". . . any act or force, however slight, employed to effect an entrance through any usual or unusual place of ingress, whether open, partially open or closed." The jury instructions correctly instructed the jury on the constituent elements of a constructive breaking. *Cf.* ***Watson***, 123 So. 3d at 448 (Lamar, J., concurring) (holding a new trial was mandated due to the jury instruction erroneously stating the law on breaking, as opposed to omitting an instruction on constructive breaking). Under the instant facts, the omission of a specifically stated constructive-breaking instruction did not negate the fact "that the jury received adequate instructions regarding this offense." [5] ***Christmas***, 10 So. 3d at 422.

¶19. Further, it is worth noting that in both ***Christmas*** and ***Ross***, the defendants displayed a weapon *at the victim's doorstep*, thereby forcing the victim to open the door and allow

---

[5]Johnson did not request a jury instruction that specifically defined "constructive breaking."

9

entrance. ***Christmas***, 10 So. 3d at 416; ***Ross***, 603 So. 2d at 865. The import from ***Christmas*** and ***Ross*** is that a constructive breaking is focused on the fact that actual force was used to remove an obstacle and gain entrance into the house, regardless of the specific location of the assault.

¶20.    Considering the facts in the light most favorable to the State, Johnson forcefully removed an obstacle—Mr. Hall—to gain entrance into the Halls' house. Indeed, the jury convicted Johnson of assaulting Mr. Hall, and he suffered a traumatic brain injury as a result of the attack. Thus, Johnson's entrance was "obtained in consequence of violence commenced" by Johnson. [6] ***Templeton***, 725 So. 2d at 766.

¶21.    Thus, for the above reasons, we hold that the State presented sufficient evidence for the "breaking" element of Johnson's burglary conviction.

**II.    Whether the trial judge abused his discretion by failing to grant Johnson's requested two-theory[7] jury instruction.**

¶22.    Johnson next argues that the trial judge erred by refusing Instruction D-6, a two–

---

[6] The Mississippi Legislature has determined aggravated assault, as provided in Section 97-3-7(2)(a) and (b) and Section 97-3-4(a), to be a crime of violence. *See also* Miss. Code Ann. § 97-3-2(c) (Rev. 2014).

[7] The parties use the term "two-interpretation" instead of "two-theory." "Two-theory" jury instruction can be used interchangeably with "two-interpretation," and the majority of this Court's caselaw uses "two-theory."

theory jury instruction.[8]   Johnson argues that both his aggravated-assault and burglary

convictions were based on purely circumstantial evidence.  A two-theory jury instruction is

an instruction given, where appropriate, only in cases in which the evidence is entirely

circumstantial.  It is different from a general circumstantial-evidence instruction.[9]  Therefore,

---

[8] Refused Instruction D-6 stated as follows:

> The Court instructs the Jury that if it [sic] there be any fact or circumstance in this case susceptible of two interpretations, on [sic] favorable and the other unfavorable to the defendant, and when the jury has considered such fact or circumstance with all the other evidence, if there is a reasonable doubt as to the correct interpretation, then you must resolve such doubt in favor of the defendant and place upon such fact or circumstance the interpretation favorable to the defendant and place upon such fact or circumstance the interpretation to the defendant.

[9] As Johnson did not request a general circumstantial-evidence instruction and the two-theory instruction is not otherwise warranted, the issue of the wisdom or necessity of granting a circumstantial-evidence instruction at all is not properly before the Court, and at this time, it is not addressed.  The general circumstantial-evidence instruction states:

> The court instructs the jury that if the State has relied on circumstantial evidence to establish its theory of guilt of the defendant, then the evidence for the State must be so strong as to establish the guilt of the defendant, not only beyond a reasonable doubt, but the evidence must be so strong as to exclude every other reasonable hypothesis other than that of guilt.

Miss. Practice Model Jury Instructions Criminal § 1:20 (2d ed. 2016).

Johnson argued that he was entitled to the two-theory instruction. [10] It is different from a general circumstantial-evidence instruction. Hence, Johnson argued that he was entitled to the two-theory instruction.

¶23. We review the refusal "of a jury instruction under an abuse-of-discretion standard." *Burleson v. State*, 166 So. 3d 499, 509 (Miss. 2014) (quoting *McInnis v. State*, 61 So. 3d 872, 875 (Miss. 2011)). A trial judge "may refuse an instruction which incorrectly states the law, is covered fairly elsewhere in the instructions, or refuse a jury instruction that is without foundation in the evidence." *McInnis*, 61 So. 3d at 875 (quoting *Jones v. State*, 797 So. 2d 922, 927 (Miss. 2001)). "[W]hen serious doubt exists as to whether an instruction should be included, the doubt should be resolved in favor of the accused." *Burleson*, 166 So. 3d at 509 (citations omitted).

¶24. Recently, the Court stated that "[a] two-theory instruction instructs the jury what to do when the 'record supports two or more hypotheses of the crime committed' and all the evidence of the crime is circumstantial.'" *McInnis*, 61 So. 3d at 875 (quoting *Goff v. State*, 14 So. 3d 625, 677–78 (Miss. 2009) (Waller, C.J., dissenting)). *McInnis* correctly iterated a point that consistently has been overlooked in our two-theory caselaw. To receive the two-theory instruction, the evidence must be purely circumstantial *and* two reasonable hypotheses or theories arising out of the evidence must be presented to the jury. *See Goff*, 14 So. 3d at 677–78 (Waller, C.J., dissenting); *Thompson v. State*, 35 So. 689, 690 (Miss. 1904). In other

---

[10]Johnson does not challenge that the State asserted direct evidence of the count for conspiracy to commit credit-card fraud.

words, in order to receive the two-theory, special, circumstantial-evidence instruction, two reasonable hypotheses or theories must be presented to the jury: one theory showing how the evidence illustrates the defendant's innocence and the other theory showing how the same evidence illustrates the defendant's guilt.

¶25. Further, as stated above, as with other jury instructions, it is within the trial judge's discretion to grant a two-theory jury instruction, and it is subject to an abuse-of-discretion standard of review.

¶26. Turning to the instant case, the State presented the following evidence to show Johnson's guilt: (1) eyewitness testimony from Williams that Johnson had given her Mrs. Hall's stolen credit card; (2) testimony from Williams that on the morning of the assault Johnson had bloody knuckles and blood on his right foot; (3) DNA evidence showing that Mr. Hall's blood was on Johnson's right shoe; (4) testimony that Johnson would have shot Mrs. Hall in the head had she awakened; and (5) testimony that Johnson had been at Mr. Hall's house the day before the assault and was supposed to return the next day. Johnson failed to use the evidence to present a second competing theory. He merely maintained that he did not commit the crime. To argue that the same evidence supports two different theories is not the same as here, where Johnson simply argued he did not commit the crime but failed to point to evidence that specifically can be read to support this argument. Thus, he did not present a second theory or hypotheses based in the evidence.

¶27. We hold that no error occurred when the trial court refused to grant Johnson's proposed two-theory instruction. Such an instruction need be considered only on a case-by-case basis when the jury is presented two reasonable hypotheses or theories, and the evidence

13

is wholly circumstantial. Further, the decision to grant a two-theory instruction rests in the sound discretion of the trial court.

### III.     Whether Johnson's counsel was ineffective.

¶28.    In his pro se supplemental brief, Johnson asserts that he received ineffective assistance of counsel[11] for four reasons: (1) Failure to file certain pretrial motions; (2) no meaningful objections throughout trial; (3) failure to object to the State's jury instructions; and (4) failure to cross-examine certain witnesses effectively on certain points.

¶29.    "Ordinarily, ineffective-assistance-of-counsel claims are more appropriately brought during post-conviction proceedings." *Archer v. State*, 986 So. 2d 951, 955 (Miss. 2008). On direct appeal, this Court is bound by the record in its review "and there may be instances in which insufficient evidence exists within the record to address the claim adequately." *Id.* (citing *Wilcher v. State*, 863 So. 2d 776, 825 (Miss. 2003)). In such cases, the defendant's "ineffective-assistance-of-counsel claim is dismissed without prejudice," and the defendant "will be allowed, if he chooses, to file an appropriate post-conviction proceeding raising the ineffective-assistance-of-counsel issue." *Archer*, 986 So. 2d at 957.

¶30.    Here, the record does not affirmatively show ineffectiveness of counsel, and neither party has stipulated that the record is inadequate to address this claim. *See Bell v. State*, 202

---

[11]Johnson had two separate attorneys work on his case during the proceedings below: L. Abraham Rowe and Wesley Thomas Evans. Rowe represented Johnson throughout the majority of the pre-trial proceedings but, because of a personal issue, Rowe had to step away as counsel. Evans represented Johnson at trial.

So. 3d 1239, 1242 (Miss. 2016). Therefore, we dismiss this claim without prejudice to allow Johnson to bring it in a later, post-conviction-relief proceeding.

> **IV.** **Whether the indictment is void due to failure to charge Johnson with an essential element of the statute and/or crime, and whether the statutes are vague, ambiguous, or unconstitutional as applied.**

¶31. For the first time on appeal, Johnson also attacks each statute under which he was indicted, as well as portions of his indictment. None of the following arguments in this issue was presented to the trial judge and therefore all are procedurally barred. *See Patrick v. State*, 754 So. 2d 1194, 1195–96 (Miss. 2000). Johnson, however, requests this Court to review these arguments under plain-error review. "A review under the plain error doctrine is necessary when a party's fundamental rights are affected, and the error results in a manifest miscarriage of justice." *McGee v. State*, 953 So. 2d 211, 215 (Miss. 2007). Further, "[u]nder the plain-error doctrine, we can recognize obvious error which was not properly raised by the defendant on appeal, and which affects a defendant's fundamental, substantive right." *Smith v. State*, 986 So. 2d 290, 294 (Miss. 2008) (internal quotation omitted). It is best used for "'correcting obvious instances of injustice or misapplied law.'" *Id.* (quoting *Newport v. Fact Concerts*, 453 U.S. 247, 256, 101 S. Ct. 2748, 69 L. Ed. 2d 616 (1981)). As stated in detail below, we hold that, under plain-error review, the instant issue is without merit.

¶32. In Count I of the indictment, the grand jury charged Johnson with burglary violating Mississippi Code Section 97-17-23. Johnson argues that the statute applies only to a "convicted" person, not a "charged" person. Because he had not been convicted at the time he was indicted, Johnson asserts that the indictment on this count is void, and he argues that the statute also should be voided for vagueness. This Court holds these arguments to be

15

nonsensical and without merit. The elements of the statute still must be satisfied for one to be *convicted* of the crime, not charged. Further, we hold the statute sufficiently prescribes what behavior constitutes the crime of burglary. Therefore, the issues with Count I do not raise to the level of plain error, and they are without merit.

¶33. In Count II of the indictment, the grand jury charged Johnson with aggravated assault under Mississippi Code Section 97-3-7(2)(a). Johnson makes three arguments with regard to Count II. We hold that none of the three arguments rises to the level of plain error, and therefore, all are without merit.

¶34. First, he argues that the indictment failed to include the essential element "with a deadly weapon or other means likely to produce death or serious bodily harm." This element applies to subsection (2)(a)(ii), and Johnson was indicted under subsection (2)(a)(i). Further, the statute contains a list of possible charges separated by "or." Thus, section (2)(a)(i) is not dependent on (2)(a)(ii) for someone to be charged with aggravated assault. Second, he argues the statute is unconstitutional under the Equal Protection Clause because it uses the word "he" and therefore treats one group (males) unequally with another. The use of the masculine pronoun in the statute does not treat one group unequally. Miss. Code Ann. § 1-3-17 (Rev. 2014) ("Words in the masculine gender shall embrace a female as well as a male, unless a contrary intention may be manifest."). Third, he agues the statute is unconstitutional because it presumes guilt at an attempt, in violation of the presumption of innocence. The fact that a person may be found guilty of an assault by attempting the unlawful conduct, however, does not create a presumption of guilt until proven innocent. A person may be charged with the crime of attempting to commit a crime. ***Bucklew v. State***,

206 So. 2d 200, 202 (Miss. 1968). Therefore, the issues with Count II do not rise to the level of plain error, and they are without merit.

¶35.   In Count III of his indictment, Johnson was indicted for conspiracy to commit credit-card fraud in violation of Mississippi Code Sections 97-19-21 and 97-1-1.  First, Johnson argues, citing *Williams v. State*, 169 So. 3d 932 (Miss. 2014), that the indictment is legally insufficient because it is factually vague and ambiguous and fails to provide the specific subsection under which he was charged.  Second, Johnson presents a sufficiency-of-the-evidence claim, arguing that the State put on no proof for the charge of conspiracy to commit credit-card fraud.  We hold that neither of these arguments rises to the level of plain error, and therefore, both are without merit.

¶36.   First, in *Williams*, the Court of Appeals reversed Williams's conviction, finding that the statute provided "myriad ways a person could violate the statute," and the indictment failed "to provide sufficient facts to properly notify Williams of the charge." *Williams*, 169 So. 3d at 936–937.  Here, although multiple ways to be convicted of conspiracy and credit-card fraud exist under these statutes, unlike *Williams*, the instant indictment provided specific facts notifying Johnson of the charge against him and his alleged violations of the statutes.  Therefore, this issue with Count III does not rise to the level of plain error.

¶37.   Second, turning to Johnson's sufficiency-of-the-evidence claim, Williams testified that Johnson gave her a credit card with Mrs. Hall's name on it and that he asked for half of the cash Williams could retrieve from the card.  Williams further testified that the credit card was used on multiple occasions and that, after the credit card was declined several times, Johnson told her to throw the card away.  These facts, taken in the light most favorable to the

17

State, show that a rational juror could have found all of the above-mentioned elements for this conspiracy charge. Therefore, this issue with Count III also fails to rise to the level of plain error.

**V.    Whether Johnson was denied his due-process right to an initial appearance according to Rule 6.03 of the Uniform Rules of Circuit and County Court Practice.**

¶38.    For the first time on appeal, Johnson asserts that he was not given an initial appearance until ten months after his arrest, in violation of Rule 6.03 of the Uniform Rules of Circuit and County Court Practice. Under Rule 6.03, every person in custody is entitled to an initial appearance within forty-eight hours of arrest. *See* URCCC 6.03. Johnson asserts that he was arrested on August 4, 2014, but he did not receive an initial appearance until more than nine months later, on May 21, 2015. However, the record is silent as to when Johnson had his initial appearance.

¶39.    "This Court declines to consider matters which were never presented or argued in the trial court and are not part of the record before us today." ***Hampton v. State***, 148 So. 3d 992, 995 (Miss. 2014). Further, "[i]ssues cannot be decided based on assertions from the briefs alone." ***Id***. at 995; *see also* Miss. R. App. P. 28(b) ("[A pro se supplemental brief in a criminal appeal] may address issues not raised by counsel, but such issues must be based on the record."). Because this issue contains an allegation outside of the record, we decline to address it.

**VI.    Whether Johnson was denied his due-process right to an arraignment according to Rule 8.01 of the Uniform Rules of Circuit and County Court Practice**.

18

¶40.    For the first time on appeal, Johnson claims three violations in regard to his arraignment and trial date.  First, he was not arraigned within thirty days after being served with the indictment.  Second, the trial judge did not enter an order setting a trial date within sixty days of his arraignment.  Third, he was not brought to trial within 270 days following his arraignment.  Again, the instant claimed violations were not brought before the trial court, and they do not rise to the level of plain error.  *See* ***McGee***, 953 So. 2d at 215; ***Patrick***, 754 So. 2d at 1195–96.

¶41.    Under Uniform Rule of Circuit and County Court Practice 8.01:

> Arraignment, unless waived by the defendant, shall be held within thirty (30) days after the defendant is served with the indictment. At or within sixty (60) days of arraignment (or waiver thereof), the court shall enter an order setting a date for trial. Unless good cause be shown . . . an accused shall be brought to trial no later than two hundred seventy (270) days following arraignment (or waiver thereof).

*Id.*  The record reveals that Johnson was indicted on May 6, 2015.  On May 21, 2015, fifteen days later, the record shows that Johnson waived arraignment and that the trial judge entered an order setting a date for trial.  Johnson's trial began on November 30, 2015, which was within the 270-day period.  Thus, as concluded above, this claim is barred.

### VII.    Whether Johnson's constitutional speedy-trial right was violated.

¶42.    Lastly, and again for the first time on appeal, Johnson asserts that his constitutional right to a speedy trial was violated.  As stated above, when a defendant presents such a claim for the first time on appeal, the error must rise to the level of plain error, meaning the defendant's fundamental right was violated. ***Dora v. State***, 986 So. 2d 917, 924 (Miss. 2008) (quoting ***Sanders v. State***, 678 So. 2d 663, 670 (Miss. 1996)) (citation omitted).

¶43.    Johnson does not address the fact that this issue was not brought up in the trial court;

rather, like the defendant in ***Dora***, Johnson "seeks to leapfrog over the required plain-error

analysis by making ***Barker***[12] genre assertions . . . ." ***Id***. at 925.  Within the framework of

plain-error review, the ***Barker*** factors are: the "[l]ength  of delay, the reason for the delay,

the defendant's assertion of his right, and prejudice to the defendant." ***Barker***, 407 U.S. at

530.

¶44.    The following are the pertinent dates for this analysis:

| | |
|---|---|
| August 4, 2014 | Arrest |
| May 6, 2015 | Indictment |
| May 15, 2015 | Capias |
| May 21, 2015 | Capias |
| May 21, 2015 | Waiver of Arraignment |
| May 21, 2015 | Order Setting Trial for Sept. 21, 2015 |
| Sept. 24, 2015 | Agreed Order Resetting Trial for Nov. 30, 2015 |
| Nov. 30, 2015 | Trial Begins |

### A.    Length of the Delay

¶45.    "The constitutional right to a speedy trial attaches 'at the time of a formal indictment

or information or else the actual restraints imposed by arrest and holding to a criminal

charge.'" ***Rowsey v. State***, 188 So. 3d 486, 495 (Miss. 2015). The delay in this case between

Johnson's arrest and the start of trial was approximately 483 days, which is presumptively

---

[12]***Barker v. Wingo***, 407 U.S. 514, 92 S. Ct. 2182, 33 L. Ed. 101 (1972).

prejudicial. *See Graham v. State*, 185 So. 3d 992, 1005 (Miss. 2016) (showing that a delay of eight months or more is presumptively prejudicial).

### B. Reason for Delay

¶46. Once a presumption of prejudice is shown, "the burden of persuasion must shift to the State to show good reason for the delay." *Id*. at 1005-06. When the State deliberately attempts to delay trial, this factor "should weigh heavily against the State[.]" *Id*. at 1006. "[T]he absence of intentional delay," such as negligence on behalf of the prosecution, also weighs against the State, though not as heavily. *Perry v. State*, 637 So. 2d 871, 875 (Miss. 1994). Here, the State admits that the record is void as to why there is more than a nine-month delay in the time between Johnson's arrest and his indictment. However, because Johnson never brought up this issue in the trial court, the State was never on notice to explain such delay on the record.

¶47. Although the record does not give a reason for the delay, Johnson suggests that the record implicitly shows that the prosecution was waiting to gather more evidence before indicting him. He points to the DNA evidence found in his grandmother's home, arguing that it wasn't until then that the State indicted him and set a trial date. This argument fails, however, because the investigator, Winn, did not find this evidence until August 2015, nearly three months *after* Johnson was indicted. In sum, the record shows no evidence of a deliberate attempt to delay Johnson's trial.

### C. Defendant's Assertion of Right

¶48. The record gives no indication that Johnson ever asserted his right to a speedy trial. On appeal, Johnson argues that the Court should depart from considering the instant factor

21

while analyzing speedy-trial claims. The United States Supreme Court has held, "The defendant's assertion of his speedy trial right . . . is entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right." *Barker*, 407 U.S. at 531-32. When a defendant fails to assert this right, it is "difficult for a defendant to prove that he was denied a speedy trial." *Id*. at 532. Therefore, we decline to depart from this factor, and it weighs against Johnson.

### D. Prejudice to the Defendant

¶49. "Under the prejudice prong of *Barker*, the Court is to consider prejudice to the defendant, bearing in mind three interests: (1) prevent oppressive pretrial incarceration; (2) minimize anxiety and concern of the accused; and (3) limit the possibility that the defense will be impaired." *Johnson v. State*, 68 So. 3d 1239, 1244 (Miss. 2011). "Generally, proof of prejudice entails the loss of evidence, the death of witnesses, or the staleness of an investigation." *Jenkins v. State*, 947 So. 2d 270, 277 (Miss. 2006). Further, the *Jenkins* Court stated that "a defendant's assertion of prejudice attributable solely to incarceration, with no other harm, typically is not sufficient to warrant reversal." *Id.* at 277.

¶50. The record is void of any inference that evidence was lost, witnesses died or evidence went stale. Further, the majority of Johnson's assertions for this factor solely center around his alleged anxiety from being incarcerated. No evidence, however, exists supporting this alleged anxiety. *See Johnson*, 68 So. 3d at 1245 ("In order for this prong to favor any defendant, evidence of legitimate anxiety and concern (medical records, documentation from the jail, etc., must exist.").

22

¶51. After considering all of the above-mentioned factors, no plain error exists showing that Johnson's constitutional speedy-trial right was violated. No evidence indicates that the delay was deliberate. Further, the record provides no indication that Johnson demanded a speedy trial or suffered any prejudice. Thus, the issue is without merit.

## CONCLUSION

¶52. For the reasons fully expounded upon above, the Court holds the following: (1) the evidence was sufficient to support the breaking element of Johnson's burglary conviction; (2) the trial court did not abuse its discretion by failing to grant Johnson's two-theory jury instruction; (3) Johnson's claim of ineffective assistance of counsel is dismissed without prejudice; (4) the indictment was proper and the applicable statutes were not vague, ambiguous, or unconstitutionally applied; (5) Johnson was not denied his due-process right to an initial appearance; (6) Johnson was not denied his due-process right to an arraignment; and (7) Johnson's speedy-trial rights were not violated. Thus, Johnson's convictions and sentences are affirmed.

¶53. **AFFIRMED.**

**WALLER, C.J., RANDOLPH AND KITCHENS, P.JJ., KING, COLEMAN, MAXWELL, BEAM AND ISHEE, JJ., CONCUR.**