# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2017-KA-01354-COA

**THAXTER T. BAKER A/K/A THAXTER BAKER** APPELLANT

v.

**STATE OF MISSISSIPPI** APPELLEE

DATE OF JUDGMENT: 01/31/2017
TRIAL JUDGE: HON. JOHN ANDREW GREGORY
COURT FROM WHICH APPEALED: CHICKASAW COUNTY CIRCUIT COURT, SECOND JUDICIAL DISTRICT
ATTORNEY FOR APPELLANT: ROBERT SNEED LAHER
ATTORNEY FOR APPELLEE: OFFICE OF THE ATTORNEY GENERAL BY: ABBIE EASON KOONCE
DISTRICT ATTORNEY: BENJAMIN F. CREEKMORE
NATURE OF THE CASE: CRIMINAL - FELONY
DISPOSITION: AFFIRMED - 12/04/2018
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**BEFORE IRVING, P.J., CARLTON AND FAIR, JJ.**

**CARLTON, J., FOR THE COURT:**

¶1. A Chickasaw County jury convicted Thaxter T. Baker of burglary of a dwelling. The trial court sentenced Baker to serve twenty-five years in the custody of the Mississippi Department of Corrections (MDOC), with ten years suspended. The trial court also ordered Baker to pay approximately $2,833.50 in restitution and costs. Baker filed posttrial motions, which the trial court denied.

¶2. Baker now appeals his conviction and sentence, arguing that: (1) the evidence presented was insufficient to sustain the conviction and (2) the trial court erred in refusing Baker's circumstantial-evidence jury instruction.

¶3.     Finding no error, we affirm the trial court's judgment.

**FACTS**

¶4.     On August 15, 2014, officers with the Okolona Police Department responded to a 911 call about a suspicious vehicle parked across from the "city barn," a facility that the City of Okolona used for water, sewer, and sanitation services. Upon arriving at the scene, the officers encountered Baker, who possessed items that linked him to a house burglary a block away. Baker was arrested and later indicted for burglary of a dwelling, in violation of Mississippi Code Annotated section 97-17-23 (Rev. 2014).

¶5.     At a trial held on January 25, 2017, the jury heard testimony from Officers Joey Miller, Tomeka Betts, and Dwight Parker of the Okolona Police Department, as well as Cassidy Edwards, the house-burglary victim. Baker also testified in his own defense. The jury ultimately returned a guilty verdict, and the trial court sentenced Baker to serve twenty-five years in the custody of the MDOC, with ten years suspended and fifteen years to serve. The trial court also ordered Baker to pay $1,000 in full restitution to the victims, $433.50 in court costs, $1,000 for the court-appointed counsel fee, a $200 bond fee, $100 to the Victim's Compensation fund, and $100 in investigative expenses, for a total of $2,833.50.

¶6.     Baker filed a motion for a judgment notwithstanding the verdict (JNOV), or, in the alternative, for a new trial. The record reflects that Baker's posttrial motions were untimely. However, the trial court entered an order denying Baker's posttrial motions and reopening the time for Baker to perfect his appeal. Baker subsequently filed his notice appealing his conviction and sentence.

2

## DISCUSSION

### I.       Sufficiency of the Evidence

¶7.     Baker argues that the evidence presented at trial was insufficient to support the conviction of burglary of a dwelling.  Baker asserts that the State failed to present any scientific evidence, including fingerprint or DNA evidence.  Baker also argues that the State failed to present any witnesses who could place him at the scene of the crime or who saw him carry property away from the residence.  Baker further maintains that he never admitted to breaking into Cassidy's house and committing a crime.

¶8.     We apply a de novo review to challenges to the sufficiency of the evidence.  *Johnson v. State*, 235 So. 3d 1404, 1410 (¶12) (Miss. 2017).  "In applying de novo review, we determine whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id*. (quoting *Warren v. State*, 187 So. 3d 616, 627 (Miss. 2016) (internal quotation mark omitted)).  We recognize that "[w]here the facts and inferences point in favor of the defendant on any element of the offense with sufficient force that reasonable jurors could not have found beyond a reasonable doubt that the defendant was guilty, the proper remedy is to reverse and render." *Jackson v. State*, 247 So. 3d 335, 337 (¶6) (Miss. Ct. App. 2018) (internal quotation marks omitted).  Evidence will be deemed sufficient if "reasonable fair-minded jurors in the exercise of impartial judgment might reach different conclusions on every element of the offense, the evidence will be deemed to have been sufficient." *Id*. The State receives "the benefit of all reasonable inferences that may be drawn from the

3

evidence." *Johnson*, 235 So. 3d at 1410 (¶12) (internal quotation mark omitted).

¶9.     Mississippi Code Annotated section 97-17-23(1) sets out the elements the State must prove to convict a defendant of burglary:  (1) the unlawful "breaking and entering into the dwelling house . . . of another" (2) "with [the] intent to commit some crime therein. . . ." *Id.*; *Johnson*, 235 So. 3d at 1410 (¶13).[1]

¶10.    Our review of the transcript reflects that the jury heard testimony from several officers with the Okolona Police Department, testimony from the victim, as well as testimony from Baker.  Felix Randle testified that on the evening of August 15, 2014, he called 911 to report a suspicious vehicle parked near his house, across from the city barn.  Randle explained that at that time, several burglaries had occurred at the city barn.  After placing the 911 call, Randle observed two men—one short, one tall—exit the vehicle and run down the street.  Randle testified that the shorter man was wearing a backpack.

¶11.    Officer Joey Miller of the Okolona Police Department responded to the 911 call.  When Officer Miller arrived at the scene, he located the vehicle parked across from the city barn and ran the vehicle's tag.  Officer Miller testified that he discovered that the vehicle was registered to Thaxter Baker.  Officer Miller then approached Randle's house, where Randle was waiting for him on the porch.  Randle informed Officer Miller that he observed two men get out of the vehicle and walk down the street.  Officer Miller testified that he walked to the

---

[1] Baker's indictment charged that Baker "did . . . unlawfully, willfully, feloniously and burglariously break and enter the dwelling of Cheryl Edwards, located at 405 Silver Street, Okolona, in Chickasaw County, Mississippi, there situated in which dwelling there were, then and there, goods, wares, chattels or merchandise kept for use, sale, deposit or transportation, with the felonious intent to unlawfully, willfully and feloniously take, steal and carry away the goods, wares, chattels or merchandise in said dwelling . . . ."

house across the street from Randle and spoke to the people who lived there. Randle's neighbors informed Officer Miller that they also saw two men exit the vehicle and walk down the street.

¶12. Officer Miller then returned to Randle's house. According to Officer Miller, as he and Randle were talking, a man wearing a backpack walked up the street toward the parked vehicle. Randle informed Officer Miller that the man looked like one of the men who had exited the vehicle earlier. Officer Miller "hollered" at the man to hang on and shined his flashlight on him. Officer Miller testified that he thought the man was going to run off, but he eventually stopped.

¶13. Officer Miller testified that he approached the man, whom Office Miller later identified as Baker, and he started talking. As they talked, Officer Miller noticed a "big bulge" in Baker's pants pocket. Officer Miller instructed Baker to remove his hand from his pocket, and he asked Baker what he had in his backpack and pocket. Baker responded that he did not know. Officer Miller informed Baker that he was going to pat him down and search him for a weapon. During the pat down, Officer Miller discovered a prescription medicine bottle full of hydrocodone in Baker's pants pocket. Officer Miller observed the name Cassidy Edwards on the medicine bottle. Officer Miller testified that he knew Cassidy and her family. Officer Miller stated that Baker informed him that he obtained the bottle and the backpack from "a white guy named Jay on the corner."

¶14. After finding the prescription drug bottle, Officer Miller placed Baker under arrest and handcuffed him. Officer Miller testified that he then searched Baker's backpack to see if it

contained any other controlled substances. During his search of Baker's backpack, Officer Miller discovered a Wii, a playstation, a television remote, and a tablet.

¶15. Less than five minutes after placing Baker under arrest, Officer Miller heard a call from dispatch reporting a break-in at a nearby house. Officer Miller soon discovered that the break-in occurred at Cassidy's home.

¶16. Officer Tomeka Betts of the Okolona Police Department testified that on the evening of August 15, 2014, she responded to Randle's 911 call shortly after Officer Miller. Officer Betts stated that once she arrived on the scene, she read Baker his *Miranda*[2] rights and put him in the back seat of Officer Miller's patrol car. Officer Betts testified that "maybe one or two minutes" after she arrived at the scene, the officers received another 911 call regarding a break-in a block away.

¶17. Officer Betts testified that she went to the house where the break in occurred and spoke to Cassidy. She informed Officer Betts that items were stolen from her house, and she provided Officer Betts with a list of the stolen items. Officer Betts testified that Officer Dwight Parker later arrived at the house, and the two of them searched the area around the house.

¶18. Cassidy testified at trial that on the evening of August 15, 2014, she returned to her house and saw that someone had broken in. Cassidy explained that the air conditioning unit in the kitchen window "was totally turned sideways . . . enough where somebody could get through on one side." Cassidy also observed that the sliding glass doors leading to the patio

---

[2] *Miranda v. Arizona*, 384 U.S. 436 (1966).

were open; she explained that the family used her grandmother's cane to lock the sliding glass doors, but the cane had been moved and thrown into the living room. Cassidy also testified that the following items were stolen from her home: a TV, a tablet, headphones, a playstation, a Wii, a pocketknife, and her prescription cough medicine.

¶19. Officer Miller testified that while Baker was in custody, he learned that some of the items reported missing from Cassidy's house were the same items contained in Baker's backpack and pants pocket. According to Officer Miller, Baker eventually agreed to show him where he put Cassidy's TV. Officer Miller and Baker walked to the location that Baker specified, but they did not find a TV. Baker told Officer Miller that he "guess[ed] his boy got it." Officer Miller testified that Baker never revealed the name of his "boy."

¶20. Officer Dwight Parker testified that on the evening of August 15, 2014, he received a call from patrol officers stating that Baker was in their custody. Officer Parker drove to the scene, where he was briefed about the evening's events. Officer Parker testified that he drove Baker to the police department that evening where he then read Baker his *Miranda* rights. Officer Parker stated that Baker waived his rights, so Officer Parker proceeded to interview him.

¶21. Officer Parker testified that during the interview, Baker admitted that he entered Cassidy's house and helped his cousin steal a TV. Officer Parker returned the next morning to interview Baker again. Officer Parker stated that during this time, Baker refused to provide him with a written statement or with his cousin's name because he did not want to "tell on" his cousin. Officer Parker testified that Baker told him, however, that when he got

7

out of jail, he would help Officer Parker get the TV back.

¶22. Officer Parker also testified that on the day after the burglary, he returned to Cassidy's house and took pictures of the entry point of the break-in. Officer Parker stated that the air conditioning unit in the kitchen window was pushed all of the way through, and the perpetrator entered the house through that window. Officer Parker testified that he did not dust for fingerprints or test for DNA because Baker had already confessed to him that he was inside of the house.

¶23. Baker testified that on the evening of August 15, 2014, he went to a store where he was approached by a man named Jay. Baker testified that Jay offered to sell him a bottle of prescription drugs, and Jay instructed Baker to meet him at a specific location at a specific time. Baker drove to the location Jay described and parked near the city barn, where he then met Jay. According to Baker, Jay offered to sell him the bottle of prescription drugs as well as a backpack containing a gaming system. Baker testified that he paid Jay $180 for the items and then proceeded to walk back to his vehicle. While returning to his vehicle, Baker encountered Officer Miller, who then searched Baker and discovered the prescription drugs and gaming system. Baker denied breaking into Cassidy's house and stealing from her. Baker denied ever telling Officer Miller that he knew where the stolen TV was located. Baker also denied telling Officer Parker that he participated in the burglary or helped his cousin break into Cassidy's house.

¶24. The record shows that the jury heard conflicting testimony regarding Baker's admission of guilt: Officer Parker testified that Baker confessed to the burglary during two

8

interviews; however, Baker denied confessing to Officer Parker.  We recognize that "[t]he jury is the judge of the weight and credibility of testimony and is free to accept or reject all or some of the testimony given by each witness."  *Johnson v. State*, 242 So. 3d 145, 155 (¶20) (Miss. Ct. App. 2017).

¶25.    After reviewing the record and viewing the evidence in the light most favorable to the State, we hold that a rational juror could have certainly found beyond a reasonable doubt that the State proved all of the elements of burglary.  As stated, "[t]he elements proving the offense of burglary are a breaking and entering of a building with the intent to commit a crime after entering."  *Sykes v. State*, 749 So. 2d 239, 242 (¶5) (Miss. Ct. App. 1999).  Both Officer Parker and Cassidy testified that the air conditioning unit in the kitchen window was turned to make a large enough opening for a person to fit through it.  Cassidy testified that several items were stolen from her house, and officers found Baker in possession of the stolen items approximately one block away from Cassidy's house.  This issue lacks merit.

## II.    Jury Instruction

¶26.    Baker next argues that the trial court erred by not giving a circumstantial-evidence jury instruction.  Baker contends that he was entitled to a circumstantial-evidence jury instruction because the State failed to present direct evidence that Baker committed burglary; therefore, the case against him was based entirely on circumstantial evidence.

¶27.    We review a trial court's decision to give or refuse a jury instruction for abuse of discretion.  *Burleson v. State*, 166 So. 3d 499, 509 (¶28) (Miss. 2015).  "Jury instructions must be read as a whole to determine if they fairly announce the law."  *Id*.  We recognize that

9

"[t]he trial court may refuse an instruction which incorrectly states the law, is covered fairly elsewhere in the instructions, or is without foundation in the evidence." *Id*.

¶28.   In the case before us, the defense requested that the trial court give the following circumstantial-evidence instruction:

> INSTRUCTION D-4
>
> The [c]ourt instructs the jury that "direct evidence" is direct proof of fact, such as testimony by a witness about what the witness personally saw, heard, or did. "Direct evidence" is the testimony of someone who claims to have personal knowledge of the commission of the crime for which he has been charged. "Direct evidence" is evidence which, if you believe it, directly proves a fact.
>
> An example is if a witness testified that he saw it raining outside and you believed him that would be direct evidence that it is raining.
>
> The [c]ourt instructs you that "circumstantial evidence" is proof of a fact of facts from which you could conclude, by your reason and common sense that another fact exists even though it is has not been proved directly. "Circumstantial evidence" is proof of one or more facts from which you could find another fact. "Circumstantial evidence" is simply a chain of circumstances that indirectly proves a fact. An example is if someone walked into the courtroom wearing a raincoat covered with drops of water and carrying a wet umbrella that would be circumstantial evidence from which you could conclude that it was raining.
>
> The law makes no distinction between the weight to be given to either direct or circumstantial evidence. You, as the jury, should decide who much weight to give to any evidence.

¶29.   During the jury-instruction conference, the defense maintained that Baker was entitled to a circumstantial-evidence instruction because the State failed to present direct evidence placing Baker at the scene or provide any DNA or fingerprint evidence. The State argued that Officer Parker testified that Baker admitted his involvement in the burglary; therefore,

10

the case was not based entirely on circumstantial evidence. The trial court agreed and refused to give Instruction D-4, explaining that "it's not a circumstantial case."

¶30. In *Burleson*, 166 So. 3d at 509 (¶29), the Mississippi Supreme Court held that circumstantial evidence is "evidence which, without going directly to prove the existence of a fact, gives rise to a logical inference that such fact does exist." The supreme court explained that "[d]irect evidence, on the other hand, must directly and not by inference implicate the accused and not just show that there has been a crime." *Id*. (internal quotation mark omitted). "While evidence does not always fall neatly into one category, examples of direct evidence include an admission or confession by the defendant to 'a significant element of the offense,' or eyewitness testimony 'to the gravamen of the offense charged.'" *Id*. (quoting *Kirkwood v. State*, 52 So. 3d 1184, 1187 (¶10) (Miss. 2011)). The supreme court further explained that "[t]he term gravamen is defined as the substantial point or essence of a claim, grievance, or complaint." *Id*. (internal quotation marks omitted). We recognize that "[w]here the State is without a confession and wholly without eyewitness testimony to the gravamen of the offense charged, the defendant is entitled to an instruction requiring the jury to exclude every other reasonable hypothesis other than that of guilt before a conviction can be had." *Id*. (internal quotation marks omitted).

¶31. In the recent case of *Moore v. State*, 247 So. 3d 1198, 1202 (¶20) (Miss. 2018), the supreme court held although an inference of guilt arose from the evidence presented at trial, the State failed to adduce direct evidence of the defendant's guilt. Accordingly, the supreme court found that the trial court abused its discretion in refusing the defendant's circumstantial

evidence instruction, explaining that the State "produced neither [a] confession nor an eyewitness to the gravamen of the offense charged." *Id*. at (¶17).

¶32.    However, "a circumstantial evidence instruction is not required when there is both direct and circumstantial evidence of the guilt of the accused." *Smith v. State*, 897 So. 2d 1002, 1009 (¶30) (Miss. Ct. App. 2004).  The supreme court has held that a confession made to a law enforcement officer "constitutes direct evidence of a crime." *Moore v. State*, 787 So. 2d 1282, 1288 (¶18) (Miss. 2001) (quoting *Ladner v. State*, 584 So. 2d 743, 750 (Miss.1991)).  The supreme court has also clarified "that confession takes the case out of a circumstantial context" and "makes a circumstantial evidence instruction inapplicable." *Taylor v. State*, 672 So. 2d 1246, 1270 (Miss. 1996) (holding that a circumstantial evidence instruction was inapplicable where a witness testified at trial that the defendant confessed to her that he killed his stepdaughter); *see also Mack v. State*, 481 So. 2d 793, 795 (Miss. 1985) (holding that an admission by a defendant to his girlfriend of an alleged burglary was a "confession," and constituted direct evidence of the crime; therefore, a circumstantial evidence instruction was not required).

¶33.    In the case before us, the jury heard Officer Parker's testimony stating that Baker confessed to him during two interviews that he participated in the burglary.  Officer Parker testified that Baker implicated his cousin as an accomplice in the burglary, but Baker refused to provide a written statement regarding the events because he did not want to "tell on" his cousin.  At trial, Baker denied confessing to Officer Parker that he participated in the burglary.  Baker also denied telling Officer Miller that he knew where Cassidy's stolen TV

12

was located.

¶34. After our review, we find that Baker's confession to Officer Parker "takes the case out of a circumstantial context," and we therefore find that no circumstantial evidence instruction was required. *Taylor*, 672 So. 2d at 1270. Accordingly, we find that the trial court did not abuse its discretion by denying Baker's circumstantial jury instruction.

¶35. **AFFIRMED.**

**LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, FAIR, WILSON, GREENLEE, WESTBROOKS AND TINDELL, JJ., CONCUR.**